Opinion
KUMAR, J.
I. INTRODUCTION
On May 21, 2013, the voters of the City of Los Angeles (City) approved Proposition D, a measure placed on the ballot by the city council to regulate medical marijuana businesses (MMB’s). (See People v. Trinity Holistic Caregivers, Inc. (2015) 239 Cal.App.4th Supp. 9, 14 [191 Cal.Rptr.3d 846] (Trinity Holistic), citing City Ord. No. 182580.) This measure superseded previous City laws concerning MMB’s, and enacted Los Angeles Municipal Code (LAMC) section 45.19.6.2, subdivision A, making it a misdemeanor to “own, establish, operate, use, or permit the establishment or operation of a[n] [MMB] . . . .” Proposition D also enacted LAMC section 45.19.6.3, which provides limited immunity from prosecution for violating LAMC section 45.19.6.2. (See Trinity Holistic, supra, 239 Cal.App.4th at p. Supp. 14.)
Defendants[1] Optimal Global Healing, Inc., and Demarcio Posey appeal the judgment resulting from their convictions for two counts of operating an unlawful MMB. Defendants contend the judgment should be reversed on the following grounds: (1) Proposition D is invalid because it was enacted without first being subjected to a planning commission hearing; (2) the trial court improperly ruled mens rea was not an element of the offense; (3) the court improperly excluded evidence that the City treated the business tax registration certificate (BTRC) held by Optimal Global Healing as a business license or equivalent, thereby denying defendants a fair trial and the right to present a defense; (4) the inference drawn by the court, and urged by the prosecutor, that Posey was the only operator of Optimal Global Healing, violated Posey’s right not to testify and, in the prosecutor’s case, constituted Griffm[2] error; (5) the court failed to exclude evidence not provided by the prosecution in response to a defense motion for discovery; and (6) there was insufficient evidence to support Posey’s conviction. We affirm the judgment.
*Supp. 5 II. FACTS[3]
A. Prosecution Case
In March 2012, Posey incorporated Optimal Global Healing, naming himself as the agent for service of process, at 11824 West Pico Boulevard in the City. At the same time, Posey filed a statement of information listing himself as the corporation’s only officer, in the positions of chief executive officer, secretary and chief financial officer. The following month, Posey filed a business tax application for a BTRC in the name of Optimal Global Healing, which was described on the application as “Retail Medical Sup[p]ly.” In August 2012, Posey submitted a second tax application that described the business as “Medical Marijuana/Pipes & Ass.” The BTRC issued in April 2012 described the business as “Retail Sales”; the BTRC issued in August 2012 described the business as “Medical Marijuana Collectives.” All of the aforementioned documents indicated Optimal Global Healing was located at the same West Pico Boulevard address.
On July 25, 2013, Los Angeles Police Department (LAPD) Officer Brent Olsen, a 19-year veteran who worked for the narcotics abatement unit for 11 years, began an investigation into a medical marijuana dispensary on West Pico. Olsen observed the front of the location, where he saw a lighted neon “open” sign in the window (which was otherwise covered by drawn shades). People were both entering and leaving the business. The storefront was painted green and displayed the words “West L.A.” and “Optimal Global Healing.” Olsen did not go inside Optimal Global Healing and did not see Posey.
As part of the investigation, Olsen also searched the Internet for the location address and business name, and found an advertisement on “Weed Maps,” a Web site that tracks medical marijuana dispensaries and doctors who issue recommendations for medical marijuana. Olsen printed an Internet advertisement, which included a photograph of the Optimal Global Healing location with a lighted green cross in the window, and a list of guaranteed maximum prices that promised a customer would pay no more than $10 for a gram of “top shelf’ marijuana or $35 for a “cap” (i.e., one-eighth of an ounce), and no more than $45 for a cap of “private reserve” marijuana.
On August 12, 2013, LAPD Detective Christopher Delatorre, a 17-year veteran also assigned to the narcotics abatement unit for 11 years, visited Optimal Global Healing but did not see Posey and did not know who was *Supp. 6 operating the business that day. Delatorre spoke with a Hispanic male who was leaving Optimal Global Healing. The male removed a pill bottle containing marijuana from a white paper bag and showed it to Delatorre. On the pill bottle label, partially obscured by black marker, were the words “compliance with H&S code 11362.5.”[4]
On August 21, 2013, LAPD Officer Jason Haggis, also assigned to the narcotics abatement unit, visited Optimal Global Healing. Haggis saw a Hispanic male approach the location on a skateboard and go inside. Shortly thereafter, the male left Optimal Global Healing carrying a small white bag. Haggis spoke with the male, who produced a California identification card and a medical marijuana recommendation. Haggis did not go inside Optimal Global Healing and did not, to his knowledge, see Posey.
Based on his experience,[5] the People’s exhibits, his own testimony and that of the other officers, Olsen opined Optimal Global Healing was a location where marijuana was distributed to qualified patients — i.e., patients in possession of a medical marijuana recommendation.
B. Defense Case
Records of the department of building and safety, which is tasked with code enforcement for zoning matters, showed no orders to comply or notices of noncompliance issued to the owner or operator of the West Pico location. Department of building and safety records also showed no business license or certificate of occupancy for the West Pico location was suspended or revoked.
III. DISCUSSION
A. Validity of Proposition D
California law allows medical marijuana dispensaries to be lawfully operated notwithstanding California statutes that otherwise make the possession, transportation, and sale of marijuana a criminal act. (See Health & Saf. Code, §§ 11362.5, subds. (d), (e), 11362.7, subds. (c)-(f), 11362.775.) California law also allows cities and counties to regulate the existence and operation of dispensaries. (See Trinity Holistic, supra, 239 Cal.App.4th at p. Supp. 16, citing City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc. (2013) 56 Cal.4th 729, 737-738 [156 Cal.Rptr.3d 409, *Supp. 7 300 P.3d 494] (City of Riverside).) “Local authority to regulate land use for the public welfare is an inherent preexisting power, recognized by the California Constitution, and limited only to the extent exercised ‘in conflict with general laws.’ (Cal. Const., art. XI, § 7.)” (City of Riverside, at p. 754, fn. 8, italics omitted.)
Proposition D, which added article 5.1 (LAMC, § 45.19.6 et seq.) to chapter IV of the LAMC, was intended “to enact a materially new ordinance that (a) prohibited] medical marijuana businesses, but (b) grant[ed] a limited immunity from the enforcement of its prohibition to those medical marijuana businesses that do not violate the restrictions set forth in this ordinance, until such time as the California Supreme Court rules regarding what cities can and cannot regulate and the City enacts new medical marijuana legislation consistent with that judicial guidance.” (LAMC, § 45.19.6.) According to defendants, however, Proposition D conflicts with zoning laws contained in the Government Code, and is therefore invalid. We exercise de novo review of this issue. (See People v. Kurtenbach (2012) 204 Cal.App.4th 1264, 1276 [139 Cal.Rptr.3d 637]; People v. Conley (2004) 116 Cal.App.4th 566, 573, fn. 6 [10 Cal.Rptr.3d 477].)
1. The Parties’Arguments
Defendants argue Proposition D’s regulation of MMB’s affected land use and, as such, contained a zoning component, which in turn required the City’s planning commission to “hold a public hearing on the proposed zoning ordinance or amendment” and provide notice thereof as set forth in the indicated code sections. (Gov. Code, §§ 65854, 65804).[6] Defendants further assert it is undisputed Proposition D was enacted without prior referral to the planning commission. As a result, according to defendants, the ordinance thus enacted is invalid.
In response, the People argue (1) because Proposition D enacted a nuisance ordinance related to public health, safety and morals, not a zoning ordinance, section 65804 did not apply; (2) even if Proposition D was a zoning ordinance, because it was enacted by the voters rather than the Los Angeles City Council (City Council), section 65804 did not apply; and (3) even if section 65804 applied, Proposition D may not be invalidated now because its validity was not challenged within 90 days of its effective date.
2. Proposition D’s Zoning Component
Section 65850 provides as relevant: “The legislative body of any county or city may, pursuant to this chapter, adopt ordinances that. . . : [¶] (a) Regulate *Supp. 8 the use of buildings, structures, and land . . . .” In strikingly similar language, the Los Angeles City Charter prescribes procedures for the “adoption, amendment or repeal of ordinances, orders or resolutions by the [City] Council concerning: [¶] (1) the creation or change of any zones or districts for the purpose of regulating the use of land; [¶] (2) zoning or other land use regulations concerning . . . use of buildings or structures . . .” (L.A. City Charter, § 558, subd. (a).)[7]
With these descriptions in mind, it would seem self-evident that an ordinance that makes it a misdemeanor to “own, establish, operate, use, or permit the establishment or operation of a[n] [MMB]” (LAMC, § 45.19.6.2, subd. A) must also have the effect of “[r]egulat[ing] the use of buildings, structures, and land.” Similarly, the provision of limited immunity from prosecution for violating LAMC section 45.19.6.2 for businesses meeting a number of restrictions — including, for example, not being “located within a 1,000-foot radius of a school, or within a 600-foot radius of a public park, public library, religious institution, child care facility, youth center, alcoholism, drug abuse recovery or treatment facility, or other [MMB]” (LAMC, § 45.19.6.3, subd. O) — must also be understood to “[r]egulate the use of buildings, structures, and land.”
We therefore reject the People’s argument that Proposition D is a nuisance ordinance and not a zoning ordinance. (See People’s Lobby, Inc. v. Board of Supervisors (1973) 30 Cal.App.3d 869, 873 [106 Cal.Rptr. 666] [claim that a hearing was not required because a proposed ordinance was not a zoning law deemed immaterial because the ordinance was “admittedly a land use control measure”], disapproved on other grounds in Associated Home Builders etc., Inc. v. City of Livermore (1976) 18 Cal.3d 582, 596, fn. 14 [135 Cal.Rptr. 41, 557 P.2d 473] (Associated Home Builders).) Indeed, it was the same restrictions on land use that brought Proposition D within the ambit of zoning law that also served the purpose of nuisance abatement. As the Supreme Court observed: “Nuisance law is not defined exclusively by what the state makes subject to, or exempt from, its own nuisance statutes. ... [A] city’s or county’s inherent, constitutionally recognized power to determine the appropriate use of land within its borders [citation] allows it to define nuisances for local purposes, and to seek abatement of such nuisances. [Citation.]” (City of Riverside, supra, 56 Cal.4th at p. 761, italics omitted.) The City of Riverside, for example, “[i]n the exercise of its inherent land use power, . . . declared, by zoning ordinances, that a ‘[m]edical marijuana *Supp. 9 dispensary’ . . . — ’[a] facility where marijuana is made available for medical purposes . . .’ [citation] — is a prohibited use of land within the city and may be abated as a public nuisance. [Citations.]” (Id. at p. 738, fn. omitted.)
3. Sections 65804 and 65854 Are Inapplicable
The stated purpose of section 65804 is “to implement minimum procedural standards for the conduct of city and county zoning hearings.” Toward that end, the section requires, inter alia: “All local city and county zoning agencies shall develop and publish procedural rules for conduct of their hearings so that all interested parties shall have advance knowledge of procedures to be followed. The procedural rules shall incorporate the procedures in [s]ection 65854.” (§ 65804, subd. (a).) Section 65854 provides in part: “The planning commission shall hold a public hearing on the proposed zoning ordinance or amendment to a zoning ordinance. . . .”
We agree with the People’s response that, because Proposition D was enacted by voters rather than the City Council, sections 65804 and 65854 did not apply, and a hearing before the planning commission was not required. Indeed, with regard to the initiative process,[8] the Supreme Court observed: “The notice and hearing provisions of the present zoning law (. . . §§ 65853-65857) . . . make no mention of zoning by initiative. The procedures they prescribe refer only to action by the city council, and are inconsistent with the regulations that the Legislature has established to govern enactment of initiatives. [W]e conclude that sections 65853-65857 do not apply to initiative action . ...” (Associated Home Builders, supra, 18 Cal.3d at p. 596.) “[T]he statutory notice and hearing provisions govern only ordinances enacted by city council action and do not limit the power of municipal electors, reserved to them by the state Constitution, to enact legislation by initiative.” (Id. at p. 588, italics added.)
As the Supreme Court explained: “The Legislature plainly drafted the [notice and hearing] provisions of the zoning law with a view to ordinances adopted by vote of the city council, the provisions merely add certain additional procedural requirements to those already specified in . . . sections 36931-36939 for the enactment of ordinances in general.” (Associated Home Builders, supra, 18 Cal.3d at p. 594, italics added.) “Procedural requirements which govern council action, however, generally do not apply to initiatives, any more than the provisions of the initiative law govern the enactment of ordinances in council. No one would contend, for example, that an initiative of the people failed because a quorum of councilmen had not voted upon it, *Supp. 10 any more than one would contend that an ordinary ordinance of a council failed because a majority of voters had not voted upon it.” (Ibid., fn. omitted.) As with initiatives, City Council-sponsored ballot measures are adopted (or rejected) by vote of the electors, not by vote of the City Council.
In any case, the Government Code notice and hearing requirements for proposed zoning ordinances were intended by the Legislature “to insure uniformity of, and public access to, zoning and planning hearings while maintaining the maximum control of cities and counties over zoning matters.” (§ 65804.) As such, with respect to ensuring public access, the requirements may be seen to address due process concerns. (See, e.g., Hurst v. City of Burlingame (1929) 207 Cal. 134, 141 [277 P. 308] [dicta] (Hurst), overruled on other grounds in Associated Home Builders, supra, 18 Cal.3d at p. 596.) Thus, while concluding “Hurst erred in holding the notice and hearing provisions of the Zoning Act of 1917[9] applied to zoning ordinances enacted by initiative” (Associated Home Builders, at p. 596), Associated Home Builders suggested the initiative process itself gave potentially affected property owners sufficient notice and opportunity to be heard. Citing to a 1927 case that first applied the recently amended initiative law to zoning matters, Associated Home Builders observed: “The opinion reasoned that since the city council had the legislative authority to enact zoning ordinances, the people had the power to do so by initiative or referendum. Rejecting an argument that the referendum procedure denied affected persons the right, granted them by municipal ordinance, to appear before the city council and state their views on the ordinance, the court replied that ‘the matter has been removed from the forum of the Council to the forum of the electorate. The proponents and opponents are given all the privileges and rights to express themselves in an open election that a democracy or republican form of government can afford to its citizens. . . .’ [Citation.]” (Id. at p. 592, quoting Dwyer v. City Council of Berkeley (1927) 200 Cal. 505, 516 [253 P. 932].)[10]
*Supp. 11 The same is true in the instant case. The removal of the ordinance from the City Council to the electorate rendered the planning commission hearing component of the Government Code inapplicable while simultaneously protecting the rights of the citizenry to (a) notice of the proposed ordinance, and (b) an opportunity to participate in the democratic process of passing the ordinance.
4. Prejudice
“There shall be no presumption that error is prejudicial or that injury was done if the error is shown.” (§ 65010, subd. (b).)[11] In this regard, defendants have not shown the City’s failure to refer Proposition D to the planning commission for a public hearing was “prejudicial error and that [they] . . . suffered substantial injury from that and that a different result would have been probable if the error had not occurred.”
As defendants acknowledged in their brief supporting their invitation to the trial court to dismiss the case pursuant to Penal Code section 1385, a previous draft of the underlying ordinance was referred to the planning commission on November 19, 2012. Defendant explained an iterative process followed in which “the [planning [commission held hearings, authorized a change in the draft ordinance, wrote a 2-page report to the City Council, transmitted the package to the City Council Planning and Land Use Committee, and served its report on 22 named individuals, some members of the public, some City staff.”
On November 29, 2012, as described in the City Attorney’s report to the City Council dated January 25, 2013,[12] the planning commission “recommended adoption of the proposed [limited immunity ordinance], and granted the City Attorney authority to make further corrections to the proposed [limited immunity ordinance] in response to verbal and written comments received by” the planning commission. Indeed, the agenda and official minutes for the special planning commission meeting held on November 29, *Supp. 12 2012, indicate the meeting was a noticed public hearing at which the public was invited to submit written requests to address the commission regarding the proposed ordinance. Thereafter, as also described in the Proposition D report, the City Council requested the City Attorney to “prepare the necessary election ordinance and ballot resolutions to place an ordinance proposition on the May 21, 2013 . . . ballot to include provisions substantially similar to those of the draft ordinance” referred to the planning commission on November 19, 2012. (Italics added.) In other words, the proposed ordinance placed on the May 21, 2013 ballot as Proposition D was a product of the back-and-forth process between the planning commission, the City Council and the City Attorney, and was “substantially similar” to the version of the proposed ordinance referred to the planning commission at the beginning of the process.[13]
Unlike in Sounhein v. City of San Dimas (1992) 11 Cal.App.4th 1255 [14 Cal.Rptr.2d 656], where “the process was fundamentally flawed by the complete omission of any public notice or hearings when adopting the [subject] zoning ordinance [citation]” {id. at p. 1260, italics added), the iterative process described above included a noticed public hearing before the planning commission and produced comments that were incorporated into the final version of the ordinance placed on the ballot. Any failure to refer the final version of the ordinance, i.e., the one that became Proposition D, to the planning commission would seem at most to be “a mere minor technical defect” (Sounhein, at p. 1260). Even if we were to assume the Government Code required Proposition D, in its final form, to be submitted to the planning commission, the absence of such a submission did not invalidate either the *Supp. 13 City Council’s placement of the proposition on the ballot or the subsequent passage of the proposition by the electorate.[14]
B. Mens Rea
Defendants contend they were improperly convicted in the absence of mens rea or guilty intent, thereby violating Penal Code section 20’s edict that “[i]n every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence.” Defendants argue the underlying ordinance, LAMC section 45.19.6, does not purport to protect the public from serious harm since it allows 135 MMB’s to operate, but at the same time it imposes a substantial penalty.
In response, the People observe that, in addition to not explicitly requiring any mens rea, LAMC section 45.19.6.2 defines a misdemeanor offense punishable by a maximum of six months in county jail or a fine of up to $1,000, or both (see LAMC, § 11.00, subd. (m)). The People further argue that analyzing the section under In re Jorge M. (2000) 23 Cal.4th 866 [98 Cal.Rptr.2d 466, 4 P.3d 297] (In re Jorge M.) favors a strict liability interpretation. We agree.
Where legislative intent was not readily discerned from the text itself, In re Jorge M. found consideration of the following factors useful: “(1) the legislative history and context; (2) any general provision on mens rea or strict liability crimes; (3) the severity of the punishment provided for the crime . . . ; (4) the seriousness of harm to the public that may be expected to follow from the forbidden conduct; (5) the defendant’s opportunity to ascertain the true facts (6) the difficulty prosecutors would have in proving a mental state for the crime . . . ; (7) the number of prosecutions to be expected under the statute . . . .” (In re Jorge M., supra, 23 Cal.4th at p. 873, citing 1 LaFave & Scott, Substantive Criminal Law (1986) § 3.8(a), pp. 342-344.) We consider the ordinance with these guidelines in mind.
LAMC section 45.19.6 states as its purpose: “[T]o stem the negative impacts and secondary effects associated with the ongoing medical marijuana businesses in the City, including but not limited to the extraordinary and *Supp. 14 unsustainable demands that have been placed upon scarce City policing, legal, policy, and administrative resources; neighborhood disruption, increased transient visitors, and intimidation; the exposure of school-age children and other sensitive residents to medical marijuana; drug sales to both minors and adults; fraud in issuing, obtaining or using medical marijuana recommendations; and murders, robberies, burglaries, assaults, drug trafficking and other violent crimes.” The focus on public protection and the severity of the stated public harm weigh in favor of strict liability.
As already noted, LAMC section 45.19.6.2, subdivision A, which declares it unlawful “to own, establish, operate, use, or permit the establishment or operation of a medical marijuana business,” does not use such words as “knowingly,” “willfully” or “intentionally” in specifying the unlawful conduct, or otherwise state an explicit mens rea requirement. Also noted above is that the maximum punishment for violation of this section is six months in county jail and a $1,000 fine (LAMC, § 11.00, subd. (m)). “ ‘Other things being equal, the greater the possible punishment, the more likely some fault is required.’ ” (In re Jorge M., supra, 23 Cal.4th at p. 873.) Both of these factors weigh in favor of strict liability.[15]
“[T]he defendant’s opportunity to ascertain the true facts” is an interpretive guideline that concerns offenses where “the characteristics that bring the defendant’s conduct within the criminal prohibition may not be obvious to the offender.” (In re Jorge M., supra, 23 Cal.4th at pp. 873, 881.) Here, the ease with which defendants could determine they were engaged in the prohibited conduct of operating an MMB weighs in favor of strict liability. At the same time, other than by inferring or presuming defendants knew what they were doing when they began operating an MMB, prosecutors might well have a difficult time proving defendants knew what they were doing was prohibited. This, too, weighs in favor of strict liability.
With regard to the number of expected prosecutions, the trial court found there were “hundreds and hundreds” of prosecutions under Proposition D, which also weighed in favor of strict liability. (See In re Jorge M., supra, 23 Cal.4th at p. 873 [“The fewer the expected prosecutions, the more likely the legislature meant to require the prosecuting officials to go into the issue of fault.”].) The parties do not contest this factual finding.
LAMC section 45.19.6.2 states a strict liability offense. Thus, the trial court properly ruled the People were not required to prove mens rea in order to secure a conviction for the illegal operation of an MMB.
*Supp. 15 C.-F.*
IV. DISPOSITION
The judgment is affirmed.
P. McKay, P. J., and Ricciardulli, J., concurred.

 When referred to in their individual capacities, defendants are identified as Optimal Global Healing and Posey, respectively.

 Griffin v. California (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229] (Griffin).

 This case was tried as a court trial. Relevant pretrial motions include an “invitation to the court” to dismiss the case pursuant to Penal Code section 1385, filed on January 13, 2014, and a nonstatutory motion for dismissal filed on June 26, 2014.

 Olsen later testified that pill bottles such as the one photographed by Delatorre are common packaging for marijuana at medical marijuana dispensaries.

 Olsen’s experience included academy training regarding marijuana and marijuana purchases in an undercover capacity, using one of two marijuana recommendations he possessed, from 30 different medical marijuana clinics.

 All further statutory references are to the Government Code unless otherwise stated.

 Per section 65803, state zoning law does not apply to charter cities, except where otherwise provided, or where the charter city does not prescribe procedures for zoning (see Ferris v. Alhambra (1961) 189 Cal.App.2d 517, 521 [11 Cal.Rptr. 475]). As noted, the Los Angeles City Charter prescribes such procedures. Thus, for ease and clarity of discussion, we will limit our references to the applicable provisions of the state zoning law.

 “The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them.” (Cal. Const., art. II, § 8, subd. (a).)

 The Zoning Act of 1917 was a state law prescribing the methods by which a local government could enact a zoning ordinance. (Hurst, supra, 207 Cal. at pp. 138-139.)

 Two years before Associated Home Builders, the Supreme Court reversed a trial court’s finding that a zoning ordinance was invalid because the City of San Diego’s initiative procedure included no provision for notice and a hearing, and federal due process precluded the adoption of a zoning ordinance without affording such notice and a hearing. (San Diego Building Contractors Assn. v. City Council of San Diego (1974) 13 Cal.3d 205, 207 [118 Cal.Rptr. 146, 529 P.2d 570].) The Supreme Court explained: “[I]t is black letter constitutional law that due process requires ‘notice and hearing’ only in quasi-judicial or adjudicatory settings and not with respect to the adoption of general legislation. Since the enactment of the instant general zoning ordinance through the initiative process was unquestionably a legislative, as distinguished from adjudicative, act, the constitutional requirements of ‘notice’ and ‘hearing’ do not apply.” (Id. at p. 211.) The Supreme Court later expressed its disapproval of the dictum regarding “black letter constitutional law,” finding instead that “[n]otice and hearing now characterize the great bulk of legislating and rulemaking.” (Horn v. County of Ventura (1979) 24 Cal.3d 605, 621 [156 Cal.Rptr. 718, 596 P.2d 1134].)

 Defense counsel stated at oral argument on October 22, 2013, that the adjuration against any presumption of prejudice in section 65010 was limited to procedural errors pertaining to notice. In fact, this is not the case, and the language of the section reveals a broader scope. “No action, inaction, or recommendation by any public agency or its legislative body or any of its administrative agencies or officials on any matter subject to this title shall be held invalid or set aside by any court on the ground of the improper admission or rejection of evidence or by reason of any error, irregularity, informality, neglect, or omission (hereafter, error) as to any matter pertaining to petitions, applications, notices, findings, records, hearings, reports, recommendations, appeals, or any matters of procedure subject to this title . . . .” (§ 65010, subd. (b), italics added.)

 This report concerned the placement of an ordinance proposition on the May 21, 2013 ballot and is hereafter referred to as the “Proposition D” report.

 Between the two draft versions of the underlying ordinance, the sections providing the definition of an MMB (LAMC, § 45.19.6.1) and setting forth the prohibited activities (LAMC, § 45.19.6.2) are identical. The conditions required for limited immunity from prosecution under LAMC section 45.19.6.2, as set forth in LAMC section 45.19.6.3, track one-to-one across all 15 subdivisions — i.e., subdivisions A through O. Thus, subdivision A in both drafts requires the MMB to have been operating as an MMB as of September 14, 2007; subdivision B in both drafts requires the MMB to have timely registered with the city clerk under the interim control ordinance; and so on. Several of the conditions contain minor differences where, for example, the use of the word “timely” in subdivision B of the earlier draft is spelled out in the later (Prop. D) draft to require registration with the city clerk by a specific date — i.e., November 13, 2007. Substantively, subdivision O in the earlier draft prohibited an MMB from being “located within a 1,000-foot radius of a school, public park, public library, religious institution, child care facility, youth center, alcoholism or drug abuse recovery or treatment facility, or other [MMB].” In the later draft, the 1,000-foot radius was changed to specify a 600-foot radius for all but the restriction near a school, which remained at 1,000 feet. In other words, the later draft was less restrictive on MMB’s. In addition, the amount of time an otherwise qualified MMB had to relocate to avoid disqualification under subdivision O was increased from 90 days to 180 days after the effective date of the article.

 In light of our disposition on this issue, we need not reach the City’s argument that Proposition D cannot be invalidated because its validity was not challenged within 90 days of June 20, 2013, the effective date of the enacted ordinance. (See § 65009, subd. (c)(1).) Nonetheless, we note, “[u]nder well-established authority, a defense may be raised at any time, even if the matter alleged would be barred by a statute of limitations if asserted as the basis for affirmative relief.” (Styne v. Stevens (2001) 26 Cal.4th 42, 51 [109 Cal.Rptr.2d 14, 26 P.3d 343].) Further, although some limitations statutes expressly apply to the defensive use of a limitations period (see, e.g., § 66499.37), section 65009 contains no such language.

 It has been strongly suggested that where a statute defines a criminal offense without any mention of mens rea, and the offense is punishable by no more than six months in jail, those two factors could be determinative. (People v. Spence (2005) 125 Cal.App.4th 710, 718-719 [23 Cal.Rptr.3d 92].)

See footnote, ante, page Supp. 1.