Filed 5/2/18

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | BR 053554 |
| Plaintiff and Appellant, | ) ) | East Los Angeles Trial Court |
| v. | ) ) | No. 6CJ00651 |
| ONESRA ENTERPRISES, INC., et al., | ) ) | |
| Defendants and Respondents. | ) ) | **OPINION** |

Appeal from a Judgment of the Superior Court of Los Angeles County, East Los Angeles Trial Court, Henry Barela, Judge.  Reversed.

Michael N. Feuer, City Attorney, City of Los Angeles, Asha Greenberg, Assistant City Attorney, and Meredith A. McKittrick, Deputy City Attorney, for Plaintiff and Appellant.

Law Offices of Stanley H. Kimmel, Stanley H. Kimmel; and Alison Minet Adams for Defendants and Respondents Onesra Enterprises, Inc., Anna Tyutina, Arsen Ordoukhanian, Irina Tyutina, and Krikor Beurekjian.

Shevin Law Group, Eric D. Shevin, Stephen J. Fisch, and Ryan M. D'Ambrosio, for Defendants and Respondents David Khedr and Odette Khedr.

\*       \*       \*

1

## INTRODUCTION

The People of the State of California appeal the dismissal by the trial court of the misdemeanor case brought against defendants Onesra Enterprises, Inc., Anna Tyutina, Arsen Ordoukhanian, Irina Tyutina, Krikor Beurekjian, David Khedr, and Odette Khedr based on their unlawful operation and use of a medical marijuana business (MMB) (L.A. Mun. Code (LAMC), § 45.19.6.2).

We reject defendants' argument that the appeal is moot. City of Los Angeles (City) Proposition D, which included the MMB ordinance, was repealed effective January 1, 2018, when the City enacted a comprehensive licensing scheme for retail sales of marijuana. But the repeal was not intended to be retroactive, and we can thus provide effective relief to the People by allowing them to maintain their prosecution against defendants. We also conclude reversal is required, because the trial court abused its discretion in dismissing the complaint pursuant to Penal Code section 1385 in the mistaken belief there was a lack of jurisdiction to prosecute defendants.

## BACKGROUND

On July 7, 2016, a complaint was filed charging defendants violated LAMC section 45.19.6.2 on May 4, 2016. They were also charged with violating LAMC section 12.21, subdivision A.1(a), based on their unpermitted use of land in operating the MMB.

Defendants filed demurrers and written motions to dismiss on various grounds. One of their arguments pertained to the effect of the trial court's order in a previous criminal case.

In trial court case No. 4CA14664, defendants Onesra Enterprises and Anna Tyutina were found guilty in a court trial of having violated LAMC sections 45.19.6.2 and 12.21 based on their unlawful operation of an MMB in 2013 and were placed on probation. On October 13, 2015, Judge Widdifield stayed the conditions of probation in the prior case pending resolution of the defendants' appeal from the judgment. One of the conditions stayed by the court was that Onesra Enterprises and Anna Tyutina not operate an MMB.[1]

---

[1] Judge Widdifield stated, "[P]robation and all of its terms and conditions are stayed pending the filing of the remittitur on appeal," and "given the totality of the circumstances, the [c]ourt permits Onesra to remain open . . . ."

Defendants argued that the case underlying the present appeal should be dismissed due to Judge Widdifield's order. Defendants in their written motions did not specify why the 4CA14664 trial court's order warranted dismissal. But at a November 7, 2016 hearing on the motion, with Judge Bourne presiding, defendants' counsel argued that, based on the order staying the probation condition, all the defendants in the case (including ones not charged in the 4CA14664 case) "believe[d] they [were] not violating the law." Counsel emphasized defendants were not arguing "Judge Widdifield gave them prospective immunity from [prosecution]," but rather that "they had a good faith belief that what they were doing was allowed, was not illegal."

On December 19, 2016, Judge Bourne denied the motion to dismiss. The court stated, "[D]id Judge Widdifield's order in case number 4CA14664 authorize the defendants to continue operating a[n] [MMB]. No, I don't believe so. And it did not provide the defendants with that immunity allowing them to continue operating a[n] [MMB]." Defendants pled not guilty at their arraignment, and the case was continued for a pretrial hearing.

On February 21, 2017, defendants filed a motion to suppress evidence under Penal Code section 1538.5. Defendants maintained evidence supporting the charges was seized pursuant to a search warrant based on an affidavit that falsely alleged the trial court in the 4CA14664 case had ordered the MMB to be shut down. The People, in their opposition to the motion, argued that the affiant mistakenly relied on "someone at the Los Angeles City Attorney's Office" telling him the location was to be shut down but, apart from this statement, the affiant also stated facts showing there was probable cause to believe defendants were operating an unlawful MMB. The case was continued to set dates for conducting a hearing on the suppression motion and starting trial.

On July 27, 2017, the court, with Judge Barela presiding, stated, "The matter is here for a 1538.5. The court discussed this case with counsel in chambers. I don't think a 1538.5 is appropriate. [¶] I assume there's a motion to dismiss in the interests of justice by the defense?"

_____

This court affirmed the judgment in Appellate Division case No. BR 052596 on November 22, 2016, and a remittitur issued thereafter.

3

Defense counsel for David and Odette Khedr responded, "Yes, your Honor," and counsel for the remaining defendants stated, "Certainly, your Honor."

The court stated that, in the 4CA14664 case, "there was an appeal filed on that conviction and a stay of execution was granted. And in the court's opinion, when a stay is granted, that means the parties are back to where they were prior to the conviction, which meant that the defendants could continue to operate up until the appeal came back." The court noted that the evidence in the case was obtained prior to the appeal being resolved, and thus the offenses in the complaint "occurred during a period where the dispensary was properly allowed to continue doing business because there was a stay in the execution of sentence."

The People disagreed that "as a matter of law these defendants were allowed to violate the municipal code based on the order staying the order granting probation," and also pointed out that Judge Bourne had already denied a motion to dismiss that argued the same grounds. The court stated, "Let's be clear. This court believes that if there's no jurisdiction to file a case, that's never lost. Whether some other judge makes a ruling or not, the jurisdiction to file a case is still an open question. It's always open to litigation." The court stated, "Motion to dismiss, 1385, all defendants. Thank you."[2]

## DISCUSSION

### Mootness

Defendants argue the People's appeal is moot, pointing out LAMC section 45.19.6.2 was repealed by the City Council in response to California voters' approval of the Adult Use of Marijuana Act (AUMA) (Health & Saf. Code, § 11362.1, et seq.). "A question becomes moot when, pending an appeal from a judgment of a trial court, events transpire that prevent the appellate court from granting any effectual relief. [Citations.]" (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 419.)[3] We decide de novo the legal issue of whether the repeal of

---

[2]With regard to the charged offenses, the minute orders for each of the defendants stated, "Disposition: Dismissal in furth [*sic*] justice per 1385 PC," and "The defense counseling [*sic*] motion for dismissal is renewed and granted on the court's motion the case is dismissed 1385 of the Penal Code."

[3]Defendants also argue the People forfeited their right to appellate review of the dismissal of the illegal use of land charge (LAMC, § 12.21) by failing to specifically maintain in the People's opening brief that the dismissal order pertaining to this charge should be reversed. We find no forfeiture

Proposition D applied to defendants' case and thereby rendered the People's appeal moot. (See *People v. Lofchie* (2014) 229 Cal.App.4th 240, 250; *People v. Monk* (2018) 21 Cal.App.5th Supp. 1, 4.)

*Marijuana laws*

LAMC section 45.19.6.2, enacted by voters of the City as part of Proposition D in 2013, made it a misdemeanor to "own, establish, operate, use, or permit the establishment or operation of a[n] [MMB], or to participate as an employee, contractor, agent or volunteer, or in any other manner or capacity in any [MMB]," or to rent, lease, or otherwise permit an MMB to occupy or use a location. LAMC section 45.19.6.3 provided limited immunity from prosecution for the crime in situations where the MMB in question satisfied several criteria, including having been in operation since 2007 and having previously registered with the City.

AUMA was approved by the voters of California on November 7, 2016. The act provided, among other things, that it does not violate California law for a person 21 years of age or older to possess and purchase up to 28.5 grams of marijuana, and that marijuana may be sold at a retail level with a license. (Health & Saf. Code, § 11362.1, subd. (a); Bus. & Prof. Code, § 26050 et seq.)

On March 7, 2017, the City's voters approved Proposition M (ord. No. 184,841). The preamble noted that, under AUMA, "Retail sales of nonmedical cannabis may only take place pursuant to a state license, scheduled to become available in 2018," and that the City Council intended to "enact by ordinance a comprehensive regulatory and enforcement system related to medical and nonmedical cannabis activity." The preamble further provided, "[S]o that medical marijuana is available to patients in need of it, [MMB's] that have been operating in compliance with the limited immunity and tax provisions of [LAMC s]ections 45.19.6.3 and 21.50 at the one location identified in the Business's business tax registration certificate on file with the City should continue to operate until City licenses or permits are available, and,

---

occurred, because the People argued in their brief that the court erred in dismissing the *entire case*, which included both the unlawful operation of an MMB charge and the illegal use of land offense upon which it was based.

5

thereafter, priority in the processing of applications for a City license or permit should be given to those Businesses."

Proposition M enacted provisions taxing the sale of marijuana for nonmedical purposes (LAMC, § 21.51), as well as marijuana sold by MMB's (LAMC, § 21.52). The ordinance further enacted LAMC section 45.19.7.1, providing, "The voters of the [City] adopted Article 5.1 of Chapter IV of the [LAMC] regarding medical marijuana (Sections 45.19.6 through 45.19.6.9) as part of Proposition D, a referendum submitted to the voters by the City Council at the election held on May 21, 2013. The Council shall adopt an ordinance repealing these provisions of Proposition D (Sections 45.19.6 through 45.19.6.9) effective January 1, 2018, unless the Council adopts a Resolution, by majority vote, specifying another date for the repeal. The Council retains and possesses authority to amend, by ordinance, these provisions of Proposition D prior to its repeal."

On December 19, 2017, the City Council enacted ordinance No. 185,343 in order "to regulate commercial cannabis activities in the City," and to establish a licensing scheme for commercial sales of marijuana, including sales by MMB's. (LAMC, § 104.00.) The ordinance's stated purpose was to allow the City "to issue licenses in an orderly and transparent manner to eligible applicants according to the requirements of this article and the Rules and Regulations, and to mitigate the negative impacts brought by unregulated Cannabis businesses." (*Ibid.*) The ordinance stated that Proposition D, "which sets forth restrictions on medical marijuana businesses and granted a limited immunity to those businesses, is repealed effective January 1, 2018." (Ord. No. 185,343, Recitals, § 1.)

The ordinance further stated an "'EMMD' means an existing medical marijuana dispensary that is in compliance with all restrictions of Proposition D" (LAMC, § 104.01(12))[4] and provided that an EMMD would be given priority in obtaining a City license, so long as it had been in full compliance with the Proposition D requirements for limited immunity in LAMC section 45.19.6.3. (LAMC, § 104.07(a).) The ordinance further provided, "An EMMD

---

[4]For purposes of this opinion, the terms "medical marijuana dispensary" and MMB are used interchangeably.

6

that as of January 1, 2018, meets all of Proposition D requirements shall continue to have limited immunity up until the time the EMMD receives Temporary Approval" for a license to sell marijuana (LAMC, § 104.07(b).)[5]

The ordinance enacted LAMC section 104.15(a)(1), making it "unlawful for a Person to establish, operate, or participate as an Employee, contractor, agent or volunteer, in any unlicensed Commercial Cannabis Activity in the City." The ordinance included MMB's within the prohibition. (LAMC, § 104.15(a)(2), (3).)

The ordinance further provided, "Starting on January 1, 2018, it is unlawful to: [¶] 1. Own or operate an Unlawful Establishment; [¶] 2. Participate as an Employee, contractor, agent or volunteer or in any other capacity in an Unlawful Establishment; [¶] 3. Use any portion of any parcel of land as an Unlawful Establishment; or [¶] 4. Lease, rent to, or otherwise allow an Unlawful Establishment to occupy any portion of parcel of land." (LAMC, § 104.15(b); see LAMC, § 104.01(27) ["'Unlawful Establishment' means any Person engaged in Commercial Cannabis Activity if the Person does not have a City issued Temporary Approval or License"].) A violation of these provisions can be enjoined as a nuisance and/or punished as a misdemeanor. (LAMC, § 104.15(c)-(e).)

In addition, the ordinance included an urgency clause, which stated, in pertinent part, "The City finds and declares that this ordinance is required for the immediate protection of the public peace, health and safety for the following reasons: As documented in, among other places, case law and the legislative histories of cannabis regulations in the City, the proliferation of unauthorized cannabis businesses, with the attendant crime and negative secondary impacts, poses a current and immediate threat to the public welfare; that despite aggressive enforcement by the office of the City Attorney, an unknown number of unauthorized cannabis businesses, including growers, delivery apps and delivery services, continue to open, close, and reopen within the City, and the proliferation of these unauthorized businesses has led to increased crime and negative secondary impacts in neighborhoods, including but not limited

_____

[5]The ordinance additionally provided that, if the EMMB was denied a license, once all appeals from the denial were rejected, "the EMMD Applicant shall immediately cease all Commercial Cannabis Activity at the Business Premises and the EMMD Applicant shall not be entitled to the limited immunity from prosecution afforded by Proposition D." (LAMC, § 104.07(d).)

7

to violent crimes, robberies, the distribution of tainted marijuana, and the diversion of marijuana; . . . " (Ord. No. 185,343, § 3.)

*Impact on pre-2018 Proposition D case*

Whether a statute or ordinance should be applied to crimes which preceded its enactment depends on legislative intent. An enacting body "'ordinarily makes laws that will apply to events that will occur in the future. Accordingly, there is a presumption that laws apply prospectively rather than retroactively. But this presumption against retroactivity is a canon of statutory interpretation rather than a constitutional mandate. [Citation.] Therefore, the [enacting body] can ordinarily enact laws that apply retroactively, either explicitly or by implication. [Citation.] In order to determine if a law is meant to apply retroactively, the role of a court is to determine the intent of the [enacting body] . . . .' [Citation.] [Citation.]" (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307.)

The California Supreme Court in *In re Estrada* (1965) 63 Cal.2d 740, 745 (*Estrada*) held: "When the Legislature amends a statute so as to lessen the punishment [without clearly specifying the statute should have only prospective operation] it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (Accord, *People v. Rossi* (1976) 18 Cal.3d 295, 301 (*Rossi*) ["the common law principles reiterated in *Estrada* apply a [fortiori] when criminal sanctions have been completely repealed before a criminal conviction becomes final"]; see also *People v. Roman* (2001) 92 Cal.App.4th 141, 147, fn. 6 [*Estrada* rule applies to local ordinances].)

Ordinance No. 185,343 repealed Proposition D's provisions making it a misdemeanor to operate or maintain an MMB without qualifying for immunity (LAMC, §§ 45.19.6.2, 45.19.6.3), and enacted provisions making it a misdemeanor to operate or maintain any "Commercial Cannabis Activity" (which includes MMB's) without a City-issued Temporary Approval or License to operate the facility (LAMC, § 104.15(a), (b)). The ordinance thus rendered criminal conduct noncriminal, so long as a seller obtains a specified approval or

8

license.

Nonetheless, the *Estrada* rule is subject to indications of contrary legislative intent. (See *People v. Conley* (2016) 63 Cal.4th 646, 657.) For example, "[t]he rule in *Estrada* . . . is not implicated where the Legislature clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent." (*People v. Nasalga* (1996) 12 Cal.4th 784, 793 (plur. opn. of Werdegar, J.), fn. omitted.) Ordinance No. 185, 343 contains no express saving clause, nor does it provide its equivalent, such as a statutory scheme delineating how pre-2018 cases are to be handled. (Cf. *People v. Conley*, *supra*, 63 Cal.4th at pp. 657-658 [refusing to apply statute retroactively because statute contained its own retroactivity provision providing relief to specified convicted persons].)

Yet, as pointed out by the People, the LAMC contains a saving clause applicable to changes to the code. LAMC section 11.00, subdivision (d), provides in relevant part, "Neither the adoption of this Code nor the repeal of any ordinance of this City shall in any manner affect the prosecution for violation of ordinances, which violations were committed prior to the effective date of the ordinance . . . ."

Contrary to defendants' argument on appeal, the LAMC section 11.00 saving clause is materially different from the provision at issue in *In re Dapper* (1969) 71 Cal.2d 184, 188 (*Dapper*), which was held not to signal a legislative intent against retroactive application of an ordinance. The City of San Diego clause, as set forth in the opinion, provided, "Neither the adoption of this Code nor the repeal *hereby* of any Ordinance of this City shall in any manner effect [*sic*] the prosecution for violation of Ordinances, *which violations were committed prior to the effective date hereof.*" (*Ibid.,* original italics.) *Dapper* pointed out that, as indicated by the highlighted portions of the provision, the clause referred only to ordinances "repealed *by* the code [at the time the code was adopted], and not to ordinances comprising the code which are subsequently repealed. It is equally clear that the 'violations' referred to, prosecution for which is preserved, are violations occurring before the adoption of the code and not violations like those involved here which occurred after adoption." (*Dapper*, *supra*, 71 Cal.2d at pp. 188-189, original italics.) LAMC section 11.00, which was last amended in 2017, prior to the repeal of Proposition D, does not include provisions such as the highlighted portions in the San Diego

9

clause, and by its terms it is not limited to repeals made at the time LAMC section 11.00 was enacted.

We infer the City Council, when it enacted ordinance No. 185,343, was aware of the LAMC section 11.00 saving clause. (See *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 199 [enacting body is presumed to be aware of related laws].) The City Council thereby intended that the repeal of Proposition D not be retroactive, because the LAMC provided that "the repeal of any ordinance of this City shall in [no] manner affect the prosecution for violation of ordinances, which violations were committed prior to the effective date of the ordinance." (LAMC, § 11.00, subd. (d).)

In addition to the saving clause, there are other strong indications that the City Council did not intend retroactivity. (See *People v. Nasalga*, *supra*, 12 Cal.4th at p. 794 [even in the absence of a saving clause, "we must look for any other indications of legislative intent"].) In short, the legislative scheme enacted by ordinance No. 185,343 contemplated MMB's that violated Proposition D prior to 2018 would continue to be prosecuted.

When the City's voters enacted Proposition M in March 2017, they contemplated that MMB's "*that have been operating in compliance with the limited immunity* [provided by Proposition D] . . . should continue to operate until City licenses or permits are available." (Ord. No. 184,841, Preamble, italics added.) The legislative scheme intended that MMB's would be allowed to operate *lawfully* until licenses were available, and could be prosecuted if they did not.

Proposition M authorized the City Council to promulgate rules regarding the regulation of sales of marijuana, and to repeal Proposition D, "*effective January 1, 2018*, unless the Council adopts a Resolution, by majority vote, specifying another date for the repeal." (LAMC, § 45.19.7.1, italics added.) This indicated an intention that MMB's would continue to be prosecuted for pre-2018 offenses, as the repeal would only be *effective* with respect to crimes that occurred as of January 1, 2018.

Ordinance No. 185,343 defined an "EMMD" as "an existing medical marijuana dispensary *that is in compliance* with all restrictions of Proposition D." (LAMC, § 104.01(12), italics added.) Also, it provided an "EMMD" would be given priority in obtaining a city

10

license, only *as long as it had been in full compliance* with the Proposition D requirements for limited immunity. (LAMC, § 104.07(a).) The ordinance thus depended, as an integral part of its scheme, on an MMB complying with the law and not having been prosecuted until it obtained a license. Further, the ordinance stated, "An EMMD that as of January 1, 2018, meets all of Proposition D requirements shall *continue* to have limited immunity up until the time the EMMD receives Temporary Approval" for a license to sell marijuana (LAMC, § 104.07(b), italics added). Providing for *continued* immunity implies pre-2018 violations were not rendered noncriminal.

Lastly, in enacting the new licensing scheme, the City Council was concerned that "the proliferation of unauthorized cannabis businesses, with the attendant crime and negative secondary impacts, poses a current and immediate threat to the public welfare," and found "that despite aggressive enforcement by the office of the City Attorney, an unknown number of unauthorized cannabis businesses, including growers, delivery apps and delivery services, continue to open, close, and reopen within the City, and the proliferation of these unauthorized businesses has led to increased crime and negative secondary impacts in neighborhoods, including but not limited to violent crimes, robberies, the distribution of tainted marijuana, and the diversion of marijuana." (Ord. No. 185,343, § 3.) Barring the prosecution of all pre-2018 violations of Proposition D would be inimical to the City's intent to ameliorate the deleterious impact of businesses that sell marijuana, including MMB's. Contrariwise, allowing pre-2018 prosecutions would assist the City's efforts to ensure public safety by punishing perpetrators and deterring future violations.

Appellate counsel for Onesra Enterprises, Anna and Irina Tyutina, Ordoukhanian and Beurekjian argue that the repeal of Proposition D by ordinance No. 185,343 must be applied to their 2016 case, because the ordinance "substitute[d] a right . . . for a crime." The argument lacks merit.

A saving clause is intended to only obviate the retroactive impact of a repeal of a law, as opposed to, when, in addition to a repeal, the change has resulted in affirmatively creating a new right or allowing persons to participate in constitutionally protected activity. "In *Hamm v. Rock Hill* (1964) 379 U.S. 306 . . . , for example, the Supreme Court concluded that,

11

notwithstanding [a federal law's] general saving provision, the Civil Rights Act of 1964, by removing criminal sanctions for 'sit-in' demonstrations in public accommodations, would mandate the abatement of any federal trespass conviction rendered, but not finalized, prior to the passage of the Civil Rights Act. As the *Hamm* court explained: 'The federal saving statute was originally enacted in 1871, 16 Stat. 432. It was meant to obviate mere technical abatement such as that illustrated by the application of the rule in *Tynen* [*United States v. Tynen* (1871) 78 U.S. (11 Wall.) 88, 95 . . .] decided in 1871. There a substitution of a new statute with a greater schedule of penalties was held to abate the previous prosecution. In contrast, the Civil Rights Act works no such technical abatement. *It substitutes a right for a crime*. So drastic a change is well beyond the narrow language of amendment and repeal [of the federal saving statute]. It is clear, therefore, that if the convictions were under a federal statute they would be abated.' [Citations.]" (*Rossi*, *supra*, 18 Cal.3d at p. 300, italics added.)

Wholly unlike the enactment of a watershed law as the Civil Rights Act, ordinance No. 185,343 augured no new "right" or specified that persons could engage in constitutionally protected activity. Defendants do not maintain they had a constitutional right to possess or sell marijuana. (See *Gonzales v. Raich* (2005) 545 U.S. 1, 22 [holding that federal drug statutes that criminalize possession of marijuana can be applied even in states that have passed laws permitting the use of marijuana for medical purposes].) The ordinance expressly provided, "Nothing in this section shall be construed as requiring the City to allow, permit, license, authorize or otherwise regulate medical or nonmedical Cannabis, or as abridging the City's police power with respect to enforcement regarding medical or nonmedical Cannabis." (LAMC, § 104.15(f).) The only "right" created by the ordinance was to *apply* for a license to sell marijuana, not a "right" to sell despite past Proposition D violations.[6]

---

[6]See LAMC, section 104.18 ("Neither this article, nor any other provision of this Code, or action, failure to act, statement, representation, recognition, certificate, approval, permit or License issued by the City, [City Department of Cannabis Regulation], the Commission, or their respective representatives, agents, employees, attorneys or assigns, shall create, confer, or convey any vested or nonconforming right or benefit regarding any Commercial Cannabis Activity beyond the period of time and range of activities specifically provided by the licenses issued by the State of California and the City. This article does not create, confer, or convey any right or benefit regarding any activity beyond the lawfulness of any License issued by the City to engage in Commercial Cannabis Activity or any applicable State of California license for such activity. . . .")

Counsel on appeal for David and Odette Khedr argue that the LAMC section 11.00 saving clause should not apply because "Proposition D's prohibitions criminalize conduct that is protected under AUMA." The argument is difficult to follow. The critical question under *Estrada* is whether the enacting body intended the repeal of a statute to be retroactive. (See *Rossi*, *supra,* 18 Cal.3d at p. 302; *Estrada*, *supra*, 63 Cal.2d at p. 747.) Counsel appears to argue that AUMA preempted Proposition D, but counsel does not explain how AUMA's impact is relevant to ascertaining whether the City Council intended to rely on the saving clause when it enacted the ordinance. Accordingly, we do not further address the point, because "'[a]n appellate court is not required to examine undeveloped claims, nor to make arguments for parties.' [Citation]." (*People v. Abarca* (2016) 2 Cal.App.5th 475, 480.)

Dismissal of Case

Penal Code section 1385, subdivision (a), provides in relevant part, "The judge or magistrate may . . . of his or her own motion[7] . . . and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal shall be stated orally on the record. The court shall also set forth the reasons in an order entered upon the minutes if requested by either party or in any case in which the proceedings are not being recorded electronically or reported by a court reporter. . . ."

A court's dismissal of a criminal action under Penal Code section 1385 is reviewed on appeal for abuse of discretion. (*People v. Williams* (1998) 17 Cal.4th 148, 158.) "'[T]he language . . . , "furtherance of justice," requires consideration both of the constitutional rights of the defendant, and the interests of society represented by the People, in determining whether there should be a dismissal. [Citations.]' [Citations.] At the very least, the reason for dismissal must be 'that which would motivate a reasonable judge.' [Citations.]" (*People v. Orin* (1975) 13 Cal.3d 937, 945-946, italics omitted.)

---

[7]Although a defendant may not move to dismiss under Penal Code section 1385, he or she may informally suggest that the court on its own motion exercise its power under the statute. (*People v. Smith* (1975) 53 Cal.App.3d 655, 657-658.) Defendants in the case *sub judice* responded affirmatively when the court asked them, "I assume there's a motion to dismiss in the interests of justice by the defense?" But, given the circumstances, we interpret their affirmative responses as only an informal request for the court to dismiss on its own motion.

The trial court dismissed the case because it concluded it lacked jurisdiction to proceed due to Judge Widdifield's order in the 4CA14664 case. The trial court noted that the order stayed, pending resolution of the appeal, the condition of probation that Onesra Enterprises and Anna Tyutina not operate an MMB. The court determined that, notwithstanding Judge Bourne's previous rejection of an argument that the case should be dismissed due to Judge Widdifield's order, dismissal was required because, "if there's no jurisdiction to file a case, that's never lost. Whether some other judge makes a ruling or not, the jurisdiction to file a case is still an open question. It's always open to litigation."

The court erred in determining there was a lack of jurisdiction. The court had subject matter jurisdiction over the criminal charges filed and personal jurisdiction over defendants based on defendants having appeared in the action. (See *Burns v. Mun. Court L.A. Jud. Dist.* (1965) 195 Cal.App.2d 596, 599-600.) To the extent the court found the People did not have jurisdiction to prosecute the action against defendants, this was also in error, as the City Attorney has the power to prosecute misdemeanor violations of City ordinances. (See *People ex rel. Chapman v. Rapsey* (1940) 16 Cal.2d 636, 643.)

The only legal effect of Judge Widdifield's order, staying conditions of probation that included barring the continued operation of the MMB, was to preclude defendants Onesra Enterprises and Anna Tyutina from being found in violation of probation based on their operation of the MMB pending resolution of their 4CA14664 appeal. Defendants cite no authority that would have allowed Judge Widdifield to prevent the People from prosecuting them for maintaining and operating an MMB based on violations occurring prior to resolution of the appeal. (See Cal. Rules of Court, rule 8.883(a)(1)(A) [briefs must support each point, "if possible, by citation of authority].)

Counsel for defendants David and Odette Khedr argue on appeal that the court correctly dismissed the case because prosecuting them would have violated due process, and thus the court would have exceeded its jurisdiction if it had allowed the case to proceed. Counsel maintains David and Odette Khedr allowed the remaining defendants to operate the MMB on the Khedr property in reliance on Judge Widdifield's order, and that all the defendants could

defend the prosecution based on "entrapment by estoppel" if the court had allowed the prosecution to continue.

As explained by the California Supreme Court in *People v. Chacon* (2007) 40 Cal.4th 558, 568, "cases applying the entrapment by estoppel defense . . . rest on the premise that the government may not actively provide assurances that conduct is lawful, then prosecute those who act in reasonable reliance on those assurances." But, defendants did not raise this theory as a ground for dismissal before Judge Barela when the court dismissed the case, and the court did not state it was relying on entrapment by estoppel in its dismissal.[8] Because defendants failed to raise the entrapment issue before Judge Barela, they forfeited it on appeal. (See *Araiza v. Younkin* (2010) 188 Cal.App.4th 1120, 1127.)[9]

We conclude Penal Code section 1385 did not support the dismissal. The court failed to take into account the interests of the People in prosecuting a case which was within their prosecutorial jurisdiction, and acted unreasonably in mistakenly believing there was a lack of jurisdiction. The trial court thus abused its discretion in dismissing the case. (See *People v. Smith* (2016) 245 Cal.App.4th 869, 873 [a court abuses its discretion when it misinterprets or misapplies the law].)[10]

## DISPOSITION

The order dismissing the complaint is reversed.

_____
Ricciardulli, J.

---

[8]Defendants' counsel only raised the issue in arguing before Judge Bourne that they relied in good faith on the stay order, and they do not argue on appeal that Judge Bourne erred in denying their motion on this basis.

[9]Defendants further appear to argue any error in dismissing the case was nonprejudicial because their Penal Code section 1538.5 motion to suppress was meritorious. However, the suppression motion was not litigated in the trial court and the People will have the right to a hearing on the issues raised therein in the trial court following the reversal.

[10]Given our disposition, we do not address the People's argument that the trial court erred in dismissing the case due to the fact Judge Bourne had previously considered and rejected the same grounds for the motions to dismiss.

We concur:

_____        _____

P. McKay, P. J.                                    Richardson, J.

16