Filed 8/4/23 (unmodified opn. attached)

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | No. BR 055406 |
| | ) | |
| Plaintiff and Appellant, | ) | Criminal Trial Court |
| | ) | |
| v. | ) | No. 9CJ00315-03 |
| | ) | |
| AARON WHEELER, | ) | **ORDER GRANTING REQUEST** |
| | ) | **FOR PUBLICATION AND** |
| Defendant and Respondent. | ) | **MODIFYING OPINION** |
| | ) | |

Appellant's request to certify for publication the opinion filed herein on July 17, 2023, is granted. (Cal. Rules of Court, rule 8.1105(c)(2), (4) & (6).)

It is ordered that the opinion be modified as indicated below. The modification does not change the judgment.

1. On page 1, line 1, insert the following:

"**TO BE PUBLISHED IN THE OFFICIAL REPORTS**"

"This opinion has been certified for publication in the Official Reports. It is being sent to assist the Court of Appeal in deciding whether to order the case transferred to the court on the court's own motion under rules 8.1000-8.1018."

2. On page 1, line 7, insert the following:

"**CERTIFIED FOR PUBLICATION**"

3. On page 1, line 16, insert the following:

"APPEAL from a judgment of the Superior Court of Los Angeles County, Francis B. Bennett, Judge.  Reversed.

Hydee Feldstein Soto, City Attorney, City of Los Angeles, Dennis Kong, Head Deputy City Attorney, Meredith A. McKittrick, Assistant Head Deputy City Attorney, and John Prosser, Deputy City Attorney for Plaintiff and Appellant.

Francisco Amado Suarez, Esq. for Defendant and Respondent Aaron Wheeler."

_____          _____          _____

Ricciardulli, J.                          P. McKay, P. J.                          Richardson, J.

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | BR 055406 |
| Plaintiff and Appellant, | ) ) | Criminal Trial Court |
| v. | ) ) | No. 9CJ00315-03 |
| AARON WHEELER, | ) ) | |
| Defendant and Respondent. | ) ) ) | **OPINION** |

Defendant Aaron Wheeler was prosecuted for committing the misdemeanors of renting a location to an unlicensed cannabis business (L.A. Mun. Code (LAMC), § 104.15, subd. (b)(4)) and maintaining a building for uses other than those for which the land was zoned based on the unlicensed store on the property (LAMC, § 12.21.A.1, subd. (a)).  Despite concluding the crimes were strict liability offenses, and the People were thus not required to prove defendant knew the cannabis store was unlicensed to secure a conviction, the trial court ruled it would admit into evidence defendant's statements to police that he thought the business had a license. The court also denied the prosecutor's request to preclude the jury from being given a mistake of fact instruction based on defendant believing the store was properly licensed.

The prosecutor announced she was unable to proceed and, following the dismissal of the case, filed a notice of appeal.  As discussed below, we agree with the People's arguments that the court erred in its evidentiary and instructional rulings and reverse the order dismissing the case.

1

BACKGROUND

The charges stemmed from the police determining a store at 720 West Imperial Highway in the City of Los Angeles was selling cannabis without a business license. Three individuals were charged with cannabis-related offenses: Omar Brown, who was observed to be conducting storefront cannabis sales from the location; Emily Wheeler, the owner of the property; and defendant, Ms. Wheeler's son, who was staying in a back house at the time a warrant was executed on the property and was accused of renting the location to the cannabis business on behalf of Ms. Wheeler.

Brown failed to appear in court to answer charges. Ms. Wheeler's case was dismissed in furtherance of justice (Pen. Code, § 1385), based primarily on her lack of knowledge the property was being used for cannabis sales.[1]

Defendant's case was called for trial on May 25, 2022, and the prosecutor announced she would be proceeding against him for renting the store to the unlicensed shop and for the unpermitted use of land.[2] The prosecutor requested in a written in limine motion that the court find the misdemeanors were strict liability offenses and that the prosecutor, to convict defendant, would not be required to prove defendant knew the storefront was unlicensed, and following extensive discussion of the issue with the prosecutor and defense counsel, the court concluded the crimes were strict liability offenses.

The prosecutor raised two additional points in her in limine motion: precluding from the trial the admission of statements by defendant to police, that he believed the store was licensed, and requesting that the court not give the jury a mistake of fact instruction pertaining to defendant's belief the store was properly licensed. The prosecutor at the in limine hearing

---

[1]This court reversed the order dismissing the charges against Ms. Wheeler on the ground that a dismissal based on lack of knowledge, when the crimes were strict liability offenses, was not in furtherance of justice and constituted an abuse of discretion. (Case No. BR 054851.) The Court of Appeal in a published opinion denied Ms. Wheeler's writ petition seeking to set aside the reversal of the order, and the California Supreme Court granted review and has not yet decided the case. (*Wheeler v. Appellate Division* (2021) 72 Cal.App.5th 824, rev. granted Mar. 16, 2022, S272850.)

[2]Defendant was also charged with establishing, operating, or participating as an employee, contractor, agent or volunteer, in unlicensed cannabis activity (LAMC, § 104.15, subd. (a)(1)), but the count was dismissed on the People's motion pursuant to Penal Code section 1385.

stated that, when police executed the warrant, defendant was standing on the porch of the back house, and he told Los Angeles Police Department Detective Owens he knew "the location was being used to sell cannabis but did not know they did not have a seller's permit or license." The prosecutor also told the court defendant said to Officer Rice at the scene, "I thought it was legal here." The prosecutor argued that, given knowledge was not an element of the offenses, defendant's statements as to not knowing the business lacked a license and believing the business was lawfully operating should be excluded as irrelevant. Because renting a location to an unlicensed cannabis store was a strict liability offense, the prosecutor argued a mistake of fact instruction, allowing the jury to acquit defendant if it found defendant mistakenly believed the store was licensed, should not be provided.

On May 27, 2022, shortly prior to jury selection commencing, the court noted that, even though the offense of renting property to an unlicensed cannabis store involved strict liability, "there should be some ability for the defense to be able to present a defense, a mistake of fact. And if not supported in the evidence, then there's no instruction, but if it was supported in the evidence, there would be an instruction. And so that going into the evidence that I've heard about so far, with regard to [defendant's statements] I thought they were licensed, I think it would be appropriate to allow that." The court further ruled defendant's statements to the police, that he did not know the business lacked a license and he believed the location was lawful, would be admitted because they would be relevant to support a mistake of fact instruction.

Jury selection began, with the court informing the venire of the charges and introducing the parties, providing preliminary instructions in the case, and asking questions of the potential jurors on voir dire. When proceedings resumed after a noon recess, outside the presence of the potential jurors, at the request of the prosecutor for clarification of its ruling, the court stated, "What I had ruled . . . is that there was [an in limine motion] from the People that would exclude [defendant] saying that he thought they were licensed, which was in the interviews with the police department. I said I would allow them." The court further noted that, although whether it gave a mistake of fact instruction would depend on the testimony presented, "I could

3

see testimony that I would allow in this area, as I'm finding that my reading of the case law would support the giving of the instruction."

The prosecutor told the court, "Thank you so very much for that clarification, your Honor. At this time, the People are going to announce unable to proceed." Based on the announcement, the court dismissed the case. The prosecutor filed a timely notice of appeal.[3]

## DISCUSSION

A court's ruling on the admissibility of evidence is reviewed for abuse of discretion (*People v. Sibrian* (2016) 3 Cal.App.5th 127, 133), and a ruling on the appropriate instructions that are to be given is subject to de novo review (*People v. Jackson* (2010) 190 Cal.App.4th 918, 923). We review the rulings in this appeal de novo, because they turned on the construction of the LAMC violation and whether there was a legislative intent to allow a mistake of fact defense. (See *People v. Lofchie* (2014) 229 Cal.App.4th 240, 250 [issues pertaining to statutory interpretation are reviewed de novo].)

We agree with the People that renting a location to an unlicensed cannabis business under LAMC section 104.15, subdivision (b)(4), is a strict liability offense, rejecting defendant's arguments to the contrary. We also agree there was no legislative intent that a mistake of fact could be used to defend against the charge of renting of property to an unlicensed cannabis store.[4]

Renting a Location to an Unlicensed Cannabis Business Is a Strict Liability Offense

---

[3]This court has jurisdiction to hear the appeal, because under Penal Code section 1466, subdivision (a)(2), the court's dismissal was "an order . . . dismissing . . . the action . . . entered before the defendant has been placed in jeopardy." (See *In re Mendes* (1979) 23 Cal.3d 847, 850 [jeopardy does not attach prior to a jury having been selected and sworn], superseded by statute on another ground as stated in *People v. Cottle* (2006) 39 Cal.4th 246, 253-254.) Since the trial court dismissed the case because the prosecutor announced she could not proceed after the court made the rulings concerning the evidence and refusing to disallow a mistake of fact instruction, "the prosecution may appeal the dismissal, and, as part of the appeal, challenge the underlying ruling[s]." (*People v. Chacon* (2007) 40 Cal.4th 558, 564.)

[4]A violation of the unpermitted use of land ordinance (LAMC, § 12.21.A.1, subd. (a)) has been held to be a strict liability offense. (*People ex rel. Feuer v. Superior Court* (*Cahuenga's the Spot*) (2015) 234 Cal.App.4th 1360, 1385.) Because the parties on appeal do not address the question, we do not decide the applicability of a mistake of fact defense to the unpermitted use of land ordinance.

4

We previously found a Los Angeles ordinance barring *operation* of an unlicensed cannabis business (LAMC, § 104.15, subds. (a)(1), (b)(2)), was a strict liability offense which required no mens rea. (*People v. Gonzalez* (2020) 53 Cal.App.5th Supp. 1, 16 (*Gonzalez*).)[5] We reach the same conclusion as to the misdemeanor of *renting* a location to an unlicensed marijuana business.

"""[O]ur primary task is to determine the [enacting body's] intent. [Citation.]"" [Citations.]" (*Gonzalez*, *supra*, 53 Cal.App.5th at p. Supp. 11; see also *Lyles v. Sangadeo-Patel* (2014) 225 Cal.App.4th 759, 764-765 [the same rules of construction apply to interpretation of statutes and local ordinances].) "'[S]ince the words the [enacting body] chose are the best indicators of its intent' [citations]" (*In re Carr* (1998) 65 Cal.App.4th 1525, 1530), we turn first to the language of the ordinance to determine if it specifies that intent or knowledge is required for a violation to be established.

The cannabis ordinance at issue makes it a misdemeanor to, "[l]ease, rent to, or otherwise allow an [u]nlawful [e]stablishment to occupy any portion of parcel of land" in order to engage in commercial cannabis activity without a city-issued temporary approval or license. (LAMC, § 104.15, subd. (b)(4).)

"'[S]trict liability offenses are denoted where ""... qualifying words such as knowingly, intentionally, or fraudulently are omitted from provisions creating the offense . . . ."" [Citation.]' [Citation.]" (*Gonzalez*, *supra*, 53 Cal.App.5th at p. Supp. 11; *People v. Martin* (1989) 211 Cal.App.3d 699, 713.) The lack of use of words such as "knowingly" or "intentionally" in LAMC section 104.15, subdivision (b)(4), indicates an intent that no mens rea is required. Also, public welfare offenses are generally considered to not require mens rea, and the ordinance here, involving the regulation of unlicensed commercial storefront cannabis sales, is such an offense. (See *Gonzalez*, *supra*, 53 Cal.App.5th at pp. Supp. 12-Supp. 13.)

We recognize failing to specify an intent or knowledge requirement is not always

---

[5]LAMC section 104.15, subdivision (a)(1) makes it a misdemeanor to "establish, operate, or participate as an [e]mployee, contractor, agent or volunteer, in any unlicensed [c]ommercial [c]annabis [a]ctivity in the City," and LAMC section 104.15, subdivision (b)(2) provides it is a misdemeanor for a person to "[p]articipate as an [e]mployee, contractor, agent or volunteer or in any other capacity in an [u]nlawful [e]stablishment."

dispositive of the issue. In addition to considering the words used, courts in California apply the multi-factor test outlined by *In re Jorge M.* (2000) 23 Cal.4th 866 (*Jorge M.*), for discerning if strict liability is appropriate. The California Supreme Court in the opinion considered: "(1) the legislative history and context; (2) any general provision on mens rea or strict liability crimes; (3) the severity of the punishment provided for the crime . . .; (4) the seriousness of harm to the public that may be expected to follow from the forbidden conduct; (5) the defendant's opportunity to ascertain the true facts . . .; (6) the difficulty prosecutors would have in proving a mental state for the crime . . .; [and] (7) the number of prosecutions to be expected under the statute." (*Id.* at p. 873.) Application of the factors here, as in *Gonzalez*, indicates strict liability is appropriate.

(1) The legislative history of the cannabis provision at issue in this appeal indicates it was enacted as part of ordinance No. 185,343 by the Los Angeles City Council on December 19, 2017, "to regulate commercial cannabis activities in the City" and to establish a licensing scheme for commercial sales of marijuana. (See LAMC, § 104.00.) "Ordinance No. 185,343's stated purpose was to allow the City 'to issue licenses in an orderly and transparent manner to eligible applicants according to the requirements of this article and the [r]ules and [r]egulations, and to mitigate the negative impacts brought by unregulated [c]annabis businesses.' (L.A. Ord. No. 185,343, § 2.)." (*Gonzalez*, *supra*, 53 Cal.App.5th at p. Supp. 12.) The ordinance replaced provisions regulating medical cannabis businesses, and the medical cannabis provisions were found to require no mens rea. (See *Gonzalez*, *supra*, 53 Cal.App.5th at p. Supp. 13; *People v. Optimal Global Healing, Inc.* (2015) 241 Cal.App.4th Supp. 1, 13 [ordinance making it a misdemeanor "to own, establish, operate, use, or permit the establishment or operation of a medical marijuana business" held to be a strict liability offense].) As we found in *Gonzalez*, *supra*, 53 Cal.App.5th at p. Supp. 14, "'[g]enerally, we presume that [a legislative body] is aware of appellate court decisions.' [Citations.] The enactment of provisions lacking any reference to scienter which govern the same general subject matter, and use similar language, as an ordinance which was judicially interpreted to be a strict liability offense indicates [the retail sales of cannabis provisions] were intended to be strict liability crimes."

6

(2) California has a provision that generally requires, "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." (Pen. Code, § 20.) But, the statute is inapplicable, "when the purpose of laws is to protect public health and the penalties are not substantial." (*Gonzalez*, *supra*, 53 Cal.App.5th at p. Supp. 14, citing *Jorge M.*, *supra*, 23 Cal.4th at p. 879.)

(3) A violation of LAMC section 104.15 can be punished with up to six months in jail and/or a fine of up to $1,000. (LAMC, § 104.15, subd. (d).) We have found such punishment to be comparatively light in determining if strict liability is required (see *Gonzalez*, *supra*, 53 Cal.App.5th at pp. Supp. 14-15), and crimes with potential punishment of up to one year in jail have been held to be strict liability offenses (see *People v. Allen* (1993) 20 Cal.App.4th 846, 855 [misdemeanor failure to file personal income tax returns]).

(4) The seriousness of the potential harm to the public weighs in favor of construing the crime to require no mens rea, as the ordinance was enacted, in part, due to the City of Los Angeles's conclusion that "'the proliferation of these unauthorized businesses has led to increased crime and negative secondary impacts in neighborhoods, including but not limited to violent crimes, robberies, the distribution of tainted marijuana, and the diversion of marijuana.' [Citation.]" (*Gonzalez*, *supra*, 53 Cal.App.5th at p. Supp. 15.) It is reasonable to conclude that renting locations to unlicensed cannabis establishments facilitates their operation, and that it thereby constitutes a "serious and widespread public safety threat" (*Jorge M.*, *supra*, 23 Cal.4th at p. 881).

(5) A person can readily ascertain if a cannabis operation, on property the person is renting out, is licensed. (See *Gonzalez*, *supra*, 53 Cal.App.5th at p. Supp. 15.) Defendant on appeal maintains, "It is true that the City of Los Angeles has a website available regarding the licensing status of cannabis dispensaries," but argues, "it cannot be assumed that an individual has the ability to access, no less, navigate the internet in general, or any website in particular."[6] To the contrary, given the ubiquity of internet access and usage, it can be reasonably expected a

---

[6]In the written in limine motion, the prosecutor noted, "the City of Los Angeles, Department of Cannabis Regulation, has a publically [*sic*] accessible website (https://cannabis.lacity.org) where defendants can check to determine if the location has a license or permit from the City. The State

person with the wherewithal to rent out a storefront can use the internet to check if the property is licensed. In any event, LAMC section 104.11, subdivision (b), provides with respect to cannabis stores, "A [l]icense must be prominently displayed at the [b]usiness [p]remises in a manner that makes it readable from the exterior of the [b]usiness [p]remises," and a person can therefore easily determine if a store is licensed by simply passing by the location and looking at the front of the business.

(6) As with selling cannabis from an unlicensed store, "[p]roving a mental state for the offenses in some situations could be problematic. . . . '[O]ther than by inferring or presuming defendants knew what they were doing when they [leased or rented a location to an unlicensed store], prosecutors might well have a difficult time proving defendants knew what they were doing was prohibited.'" (*Gonzalez*, *supra*, 53 Cal.App.5th at p. Supp. 15.)

(7) With regard to the factor as to the number of prosecutions involved, """"the fewer the expected prosecutions, the more likely the [legislative body that enacted the provision] meant to require the prosecuting officials to go into the issue of fault."'" [Citation.]" (*Gonzalez*, *supra*, 53 Cal.App.5th at p. Supp. 13, fn. 6; see *Jorge M.*, *supra*, 23 Cal.4th at p. 873.) It follows that, if there is a large number of prosecutions, this factor favors finding a violation constitutes a strict liability offense. The prosecutor told the trial court that, since 2018 when the LAMC retail cannabis sales ordinances went into effect, "there have been over 800 cases filed against over 2,700 defendant [*sic*] in over 500 locations." Although it is not clear how many of these cases concerned renting locations to unlicensed cannabis businesses, defendant does not dispute these figures, and we discern the large number of cases involving storefront cannabis sales favors an intent that no mental state is required to establish a violation.

Lastly, we note that in *Wheeler v. Appellate Division*, *supra*, 72 Cal.App.5th at p. 840, in rejecting an argument that an owner renting a location to an unlicensed cannabis business was preempted because the LAMC section duplicated state law criminalizing renting a location for the purpose of unlawfully distributing a controlled substance for sale (Health & Saf. Code,

---

Bureau of Cannabis Control provides a similar, publicly-accessible, means of checking whether a State-issued license has been issued to a particular business or for a specific location."

8

§ 11366.5), the Court of Appeal found, "the local ordinance imposes strict liability while the state law requires proof of knowledge." Citing *Jorge M.*, *supra*, 23 Cal.4th at p. 872, in accord with our determination in the case *sub judice*, the Court of Appeal concluded strict liability was appropriate because, "[i]t falls well within the City's land use powers to enforce its zoning ordinances through criminal as well as civil nuisance penalties, and it is common for such 'public welfare offenses' not to require proof of knowledge or intent." (*Wheeler v. Appellate Division*, *supra*, 72 Cal.App.5th at p. 842; see Cal. Rules of Court, rule 8.1115(e)(1) ["Pending review and filing of the Supreme Court's opinion . . . a published opinion of a Court of Appeal in the matter has no binding or precedential effect, and may be cited for potentially persuasive value only"].)

Mistake of Fact Is Not a Defense to Renting a Location to an Unlicensed Cannabis Business

"[M]istake of fact operates as a kind of failure-of-proof defense, reflecting a defendant's attempt to suggest the prosecution failed in its burden to establish beyond a reasonable doubt that the defendant acted with the criminal intent required for the offense." (*People v. Hendrix* (2022) 13 Cal.5th 933, 940; see CALCRIM No. 3406 [explaining for the jury a defendant is not guilty of an offense if the defendant "did not have the intent or mental state required to commit the crime because [the defendant] [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact"].)

Because the defense is geared towards negating the intent or mental state required to commit a crime, it has been held the defense does not apply to strict liability crimes. (See *People v. Bickerstaff* (1920) 46 Cal.App. 764, 770; *People v. Schwartz* (1937) 28 Cal.App.2d Supp. 775, 778.) In arguing the mistake of fact defense applies to a charge of renting a location to an unlicensed cannabis business, and that an instruction on mistake of fact can be provided in such a case, defendant relies principally on *In re Jennings* (2004) 34 Cal.4th 254 (*Jennings*).[7] We find *Jennings* to be distinguishable.

---

[7]Other opinions cited by defendant, which we find not to be on point, include cases concerning federal statutes significantly different than the one at hand (see, e.g., *Rehaif v. United States* (2019) ___ U.S. ___, 139 S.Ct. 2191 [firearms offense requiring proof a defendant knowingly violated a statute]), and a California case pre-dating *Jorge M.* (*People v. Vogel* (1956) 46 Cal.2d 798 [a defendant's bona fide and reasonable belief that he was divorced is a defense to bigamy]).

In *Jennings*, the defendant was charged with the misdemeanor of violating Business and Professions Code section 25658, subdivision (c), purchasing alcohol for a person under 21 years of age who consumes the alcohol and thereby proximately causes great bodily injury or death to the person or any other person. The charge was based on the defendant inviting guests to his home and serving them alcoholic beverages, and a person under 21 years of age getting intoxicated and causing a car accident resulting in serious injuries while driving. (*Jennings, supra*, 34 Cal.4th at p. 260.) The trial court determined the crime was a strict liability offense, ignorance of the age of the person who was furnished with the alcohol was irrelevant, and the defendant was convicted. (*Ibid.*) The Court of Appeal affirmed, and review was granted.

The California Supreme Court applied the *Jorge M.* factors, and found knowledge of age was not an element of the crime. The Supreme Court noted that, given the penalty called for a minimum term of six months in jail not to exceed one year and the associated "public obloquy for violation of the statute,"[8] not all the factors pointed towards a legislative intent that scienter was unnecessary. (*Jennings, supra*, 34 Cal.4th at p. 276.) Nonetheless, on balance, *Jennings* found the legislative history of the statute and the seriousness of the harm to the public provided the strongest indication of an intent that a conviction "[did] not require a showing the offender had knowledge of the imbiber's age." (*Ibid.*)

Turning to the question of whether mistake of fact as to age of the person who was furnished with the alcohol was a defense, the Supreme Court observed, "As a general matter, . . . a mistake of fact defense is not available unless the mistake disproves an element of the offense. [Citation.]" (*Jennings, supra*, 34 Cal.4th at p. 277.) Even so, *Jennings* concluded there was a viable mistake of age defense for violating the statute, and it reversed the conviction. The Supreme Court based its conclusion on the modern trend in legislation (which it found was "to require proof of some criminal intent or knowledge in order to secure a criminal conviction"), Penal Code section 20 (the statute providing "there must exist a union,

---

[8]The California Supreme Court indicated, "the reputational injury and personal disgrace" a person will suffer if convicted "are factors relevant to determining the severity of the punishment." (*Jennings, supra*, 34 Cal.4th at p. 274.)

or joint operation of act and intent, or criminal negligence" in crimes), and the legislative scheme of which the Business and Professions Code provision was a part. (*Id.* at pp. 279-280.)

As to the legislative scheme, *Jennings* found particularly persuasive the fact that, although Business and Professions Code section 25658, subdivision (c), did not require that the purchaser of the alcohol know the person who was given the alcohol was under 21, the Legislature specifically stated licensees selling alcohol can "raise a mistake of fact defense as to the age of a customer to whom alcohol was sold or served." (*Jennings, supra,* 34 Cal.4th at p. 280 [citing Bus. & Prof. Code, § 25660, "Proof that the defendant-licensee, or his employee or agent, demanded, was shown and acted in reliance upon such [described] bona fide evidence [of majority and identity] in any transaction, employment, use or permission forbidden by [statutes] shall be a defense to any criminal prosecution therefor"].) Observing it would be absurd for the Legislature to provide a mistake of age defense to licensees—who can sell alcohol to hundreds of people—and not to individuals who serve alcohol only occasionally and to just a few people, *Jennings* concluded, "Does [Business and Professions Code] section 25660 suggest the Legislature's intent to permit a similar defense to nonlicensees? We hold that it does." (*Id.* at p. 281.)

Although *Jennings* held a mistake of fact defense could be viable even though the crime at issue was a strict liability offense, the opinion does not stand for the proposition that the defense applies to *all* strict liability crimes. We construe *Jennings* as holding a legislative body can intend to both make a crime a strict liability offense, meaning the prosecution can obtain a conviction even in the absence of scienter, and allow a person to defend against a charge based on mistake of fact. *Jennings* found a violation of Business and Professions Code section 25658, subdivision (c), qualified as such an offense. But, given the differences between the alcohol offense and the LAMC ordinance, we reach a different conclusion as to the misdemeanor of renting a location to an unlicensed cannabis business.

Unlike in *Jennings*, all of the *Jorge M.* factors strongly point to the LAMC offense, involving an ordinance governing commercial transactions commonly falling within the category of public welfare offenses (see *Gonzalez, supra,* 53 Cal.App.5th at pp. Supp. 12-

11

Supp. 13), requiring no knowledge as to the store's license status in order for a person to be convicted. Notably, the factors involve a crime with punishment of no more than six months in jail (in contrast to a minimum term of six months in jail not to exceed one year in *Jennings*).[9] Further, there is no indication a conviction of renting a location to a cannabis business lacking a license causes reputational injury or personal disgrace (compared to the conviction of a person who purchases alcohol to a person under 21 years of age who then causes great bodily injury or death in *Jennings*). Moreover, the legislative history factor weighs especially strongly in favor of no scienter being required, given, as discussed above, the current retail cannabis sales provisions are the direct offshoot of similarly worded medical cannabis storefront laws which were held to be strict liability offenses. (See *Gonzalez*, *supra*, 53 Cal.App.5th at p. Supp. 14.) Although the modern trend is towards requiring some form of scienter in criminal statutes, and Penal Code section 20 generally requires union of act and intent, unlike in *Jennings*, no legislative intent to allow a mistake of fact defense is discernible from the LAMC cannabis sales scheme.

The Legislature provided a mistake of age defense for a statute closely related to the crime in Business and Professions Code section 25658, subdivision (c), of purchasing alcohol for a person under 21 years of age who consumes it and thereby proximately causes great bodily injury or death (Bus. & Prof. Code, § 25660 [licensees selling alcohol]), signaling an intent that a similar defense should apply in both statutes. (*Jennings*, *supra*, 34 Cal.4th at p. 281.) LAMC section 104.15(b)(4) is part of a regulatory scheme "enacted in 2017 to replace an ordinance adopted by voters of the City of Los Angeles as part of Proposition D in 2013 to regulate medical cannabis businesses. [Citation.]" (*Gonzalez*, *supra*, 53 Cal.App.5th at p. Supp. 13, citing *People v. Onesra Enterprises, Inc.* (2018) 24 Cal.App.5th Supp. 9, 16, fn. omitted.) In contrast to the statute in *Jennings*, the LAMC provisions pertaining to the cannabis

---

[9]The punishment provided for the offense further distinguishes the present case from an opinion cited by the trial court in favor of instructing on mistake of fact—*People v. Vaughn* (2014) 230 Cal.App.4th 322, 333—where the Court of Appeal, in dicta, stated mistake of fact was a defense to a strict liability transfer of a handgun crime (former Pen. Code, § 12072, subd. (d)) because, in part, the punishment for the offense was imprisonment for up to four years.

storefront operation, maintenance, sales, and rental of unlicensed locations contain no mistake of fact defense.

Conclusion

The court erred in denying the prosecutor's request to preclude the jury from being given a mistake of fact instruction. Given defendant's statements about believing the business had a license would only have been relevant to a mistake of fact defense, the court also erred in ruling to admit the statements. (See Evid. Code, § 350 [only relevant evidence may be admitted].) Accordingly, the People are entitled to a reversal of the order dismissing the case. (See *People v. Chacon*, *supra*, 40 Cal.4th at pp. 564-565.)[10]

## DISPOSITION

The order dismissing the case is reversed, and the matter is remanded for further proceedings in the trial court consistent with this opinion.

_____
Ricciardulli, J.

We concur:

_____          _____
P. McKay, P. J.                                                        Richardson, J.

---

[10]Defendant concludes his respondent's brief by arguing the trial court "should exclude mention of prior convictions and/or arrests of defendant, in the event [defendant] elects to testify." (Capitalization omitted.) The trial court made no ruling on this question, and the argument is not cognizable in the People's appeal.