[No. B074134. Second Dist., Div. Three. Nov. 29, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH G. ALLEN, Defendant and Appellant.

**COUNSEL**

Benjamin P. Ramos for Defendant and Appellant.

James K. Hahn, City Attorney, Debbie Lew and Peter W. Mason, Deputy City Attorneys, for Plaintiff and Respondent.

**OPINION**

**KITCHING, J.**—Defendant and appellant Ralph G. Allen (Allen) appeals the judgment entered following his conviction by jury of three counts of

misdemeanor failure to file California personal income tax returns in violation of California Revenue and Taxation Code section 19401, subdivision (a).[1]

We affirm based on our finding that willfulness is not an element of section 19401, subdivision (a) and that section 19401 is a public offense strict liability statute.

## Factual and Procedural Background

On November 15, 1990, the city attorney filed a three-count complaint against Allen in the municipal court charging him with a violation of section 19401, subdivision (a) for failure to file personal income tax returns for the years 1985, 1986, and 1987.

The trial began on July 25, 1991. At the close of testimony, the court instructed the jury. One of the instructions stated, in relevant part: "Intent is not an element of the offense defined in Revenue and Taxation Code section 19401. The law applies to a person who has a duty to file an income tax return and who fails to do so, regardless of his or her intention."

Defense counsel objected to the instruction and argued that because of the potential sentence in the case, "the Court should read into . . . Section 19401 [the] requirement of willfulness . . . ."

The jury returned a verdict of guilty on all three counts. The court imposed consecutive sentences of seven months in county jail on each count, for a total sentence of twenty-one months. The sentence was stayed pending appeal.

On February 23, 1993, the appellate department of the superior court affirmed the judgment of the municipal court and on March 9, 1993, Allen filed a petition for rehearing and application for certification pursuant to California Rules of Court, rules 107 and 63.

On March 18, 1993, the appellate department of the superior court certified this case for transfer to the Court of Appeal in order to settle an important question of law, to wit, "whether willfulness is an element of the crime of failing to file an income tax return . . . ."

On March 31, 1993, the certification was accepted by this court.

---

[1] All references to statutes will be to the Revenue and Taxation Code unless otherwise stated.

CONTENTIONS

Allen contends:

1.  Willfulness is a necessary element of section 19401, subdivision (a).

2.  The lack or inadequacy of regulations promulgated by the Franchise Tax Board denies Allen due process and fair notice under the law.

3.  Section 19401, subdivision (a) is unconstitutional because it fails to set a higher standard of guilt or culpability to distinguish the civil offense from the criminal offense.

DISCUSSION

1.  *The Legislature Clearly Intended That Willfulness Is Not Required Under Section 19401.*

■■■ We look for the Legislature's intent in drafting and enacting a statute to determine if that statute imposes strict criminal liability. To determine this legislative intent, we look at the words of the statute. "In interpreting a criminal statute, the major consideration is legislative intent. [Citation.] The primary source of legislative intent is the language of the statute. . . . [Citation.]" (*People* v. *Municipal Court (Hinton)* (1983) 149 Cal.App.3d 951, 954 [197 Cal.Rptr. 204].) The Legislature could not have made it clearer that willfulness is not a required element of section 19401.

The statute states in relevant part: "Any person who . . . : [¶] (a) *With or without intent to evade* any requirement of this part or any lawful requirement of the Franchise Tax Board under this part, fails to file any return . . . [¶] . . . is . . . guilty of a misdemeanor . . . ." (Italics added.)[2]

Thus, the Legislature created a strict liability offense by specifically providing in section 19401 that a person who fails to file a tax return is guilty of a misdemeanor even if that person has no *intent* to evade the tax law.

___

[2]Section 19401 states more fully: "Any person who does any of the following is liable for a penalty of not more than five thousand dollars . . . [¶] (a) *With or without intent to evade* any requirement of this part or any lawful requirement of the Franchise Tax Board under this part, fails to file any return or to supply any information required under this part, . . . [¶] . . . [¶] (c) Under this part, is required to pay any estimated tax or tax, who willfully fails to pay that estimated tax or tax, at the time or times required by law or regulations. [¶] . . . [¶] The person is also guilty of a misdemeanor and shall upon conviction be fined not to exceed five thousand dollars ($5,000) or be imprisoned not to exceed one year, or both, at the discretion of the court, together with costs of investigation and prosecution." (Italics added.)

In *People* v. *Kuhn* (1963) 216 Cal.App.2d 695 [31 Cal.Rptr. 253], the court determined the Legislature's intent by focusing on the words of the statute. The court compared sections 19401 and 19406, determined that they do not define the same offense, and held that section 19401 did not require an intent to evade the payment of taxes. The court construed the statute as follows: "Obviously, in determining the intention of the Legislature . . . the phrase 'with or without intent to evade' should be considered as a whole; as an integral part of the whole code section [citations]; and in relation to other statutes on the same subject, so as to harmonize the whole law. [Citations.] When so considered, the subject phrase means 'regardless öf intent to evade'; indicates that intent is an immaterial factor in the offense described [citations]; and classifies the statute in question as one criminally enforcing an obligation imposed by law without regard to criminal knowledge or intent." (216 Cal.App.2d at p. 698.)

The court discussed section 19406 and stated: "It is significant that the offense defined by section 19406, i.e., the felony statute, concerns a person who 'wilfully fails' to file a return, while that defined by section 19401, i.e., the misdemeanor statute, omits the term 'wilfully' and applies to a person who merely 'fails' to file a return. It has been held that where a statute which declares the commission or omission of an act to be an offense omits 'qualifying words such as knowingly, intentionally, or fraudulently,' guilty knowledge and intent are not elements of the offense so defined. [Citations.] By analogy the same conclusion follows from omission of the qualifying word 'wilfully' which, as used in a criminal statute, 'implies a purpose or willingness to do the act' and also implies that the person involved 'knows what he is doing intends to do what he is doing and is a free agent.' " (216 Cal.App.2d at p. 699.)

The court concluded that "[w]hen the Legislature included the qualifying word 'wilfully' in the felony statute, which clearly applies only to a person who intended to evade payment of the tax imposed, but omitted this qualifying word from the misdemeanor statute, it thereby indicated that the latter statute should apply to a person who fails to file an income tax return regardless of his intention . . . . This circumstance justifies our conclusion that the phrase 'with or without intent to evade' as used in section 19401, is a positive declaration that an intent to evade is not an element of the offense therein defined." (216 Cal.App.2d at p. 699.)

*Kuhn* was decided in 1963 and section 19401 was amended in 1984 without making any changes to the language analyzed in *Kuhn*. Had the Legislature disagreed with the analysis of *Kuhn*, it could have added "wilfully" to the portion of the statute discussed by *Kuhn*.

"The Legislature can be presumed to know of existing judicial interpretation, and a reenactment of a statute without change in wording indicates the Legislature's approval of the judicial interpretation. [Citations.]" (*People* v. *Lustman* (1970) 13 Cal.App.3d 278, 287 [91 Cal.Rptr. 548], disapproved on other grounds in *People* v. *Ruster* (1976) 16 Cal.3d 690, 697, 699 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].)

"[I]f the Legislature does not see fit to change the language of the statute, it must be presumed that the Legislature is aware of the judicial construction and by its failure . . . has approved the decision as a statement of legislative intent. [Citations.]" (*People* v. *Strohl* (1976) 57 Cal.App.3d 347, 359-360 [129 Cal.Rptr. 224].)

2. *Failing to File an Income Tax Return Is a Regulatory or Public Welfare Offense for Which the Finding of a General Criminal Intent Is Not Required.*

a. *True Crimes v. Public Welfare Offenses.*

Allen argues that failing to file an income tax return cannot be a strict liability offense because it is not a "public welfare offense." We disagree.

Witkin and Epstein discuss the difference between "true crimes" and "public welfare" or regulatory offenses as follows: "It is an established principle that every true crime (as distinguished from 'regulatory' or 'public welfare' offenses) ordinarily requires a general criminal intent or 'mens rea.' This principle is expressed in [Penal Code section] 20 . . . . : 'In every crime or public offense there must exist a union, or joint operation of act and intent . . . .'" (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 97, p. 115.)

Witkin and Epstein further state that "[c]ertain kinds of regulatory offenses, not common law crimes and classified as 'malum prohibitum' rather than 'malum in se,' are punishable despite the absence of criminal intent in any of the accepted senses. Scholars usually refer to them by such terms as 'public welfare offenses,' or 'civil offenses,' to distinguish them from 'true crimes.' [Citations.]" (1 Witkin & Epstein, Cal. Criminal Law, *supra*, § 110, at pp. 129-130.)

In *Morissette* v. *United States* (1952) 342 U.S. 246, 252-253 [96 L.Ed. 288, 294-295, 72 S.Ct. 240], the United States Supreme Court discussed the concept of "public welfare offenses" and stated that public welfare offenses ". . . depend on no mental element but . . . call into existence new duties

and crimes which disregard any ingredient of intent." The court further stated that these statutory public welfare offenses ". . . do not fit neatly into any of [the] accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty." (*Id.* at p. 255 [96 L.Ed.2d at p. 296].)

The court continued, "[w]hile such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted." (342 U.S. at p. 256 [96 L.Ed.2d at pp. 296-297.) Finally, the court concluded that ". . . legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. . . . Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime." (*Ibid.*)

In *People* v. *Martin* (1989) 211 Cal.App.3d 699 [259 Cal.Rptr. 770, 86 A.L.R.4th 383], a California appellate court explained public welfare offenses as follows: "Normally, persons who commit an act through misfortune or by accident with no evil design, intention or culpable negligence are not criminally responsible for the act. [Citations.] '[T]o constitute a criminal act the defendant's conduct must go beyond that required for civil liability and must amount to a "gross" or "culpable" departure from the required standard of care. [Citations.] The conduct must be aggravated or reckless; that is, it must be such a departure from what would be the conduct of an ordinarily prudent person under the same circumstances as to be incompatible with a proper regard for human life. The conduct must show an indifference to the consequences, and this has been said to require knowledge, actual or imputed, that the act tends to endanger another's life.' [Citation.]" (*Id.* at pp. 712-713.)

The court continued: " 'The only exceptions to this general rule are so-called "public welfare" or "*malum prohibitum*" crimes which are punishable despite the absence of any criminal intent or criminal negligence.' [Citation.] 'These public welfare crimes are most often based upon the violation of statutes purely regulatory in nature and involving widespread

injury to the public. [Citation.]' [Citation.] Those who violate these public welfare crimes may be held strictly liable for their conduct. (*United States* v. *Dotterweich* (1943) 320 U.S. 277, 281 [88 L.Ed. 48, 51-52, 64 S.Ct. 134]; *Chevron Chemical Co.* [(1983) 143 Cal.App.3d 50 (191 Cal.Rptr. 537)] at p. 53 and cases cited therein.) [¶] Strict liability offenses are denoted where ' ". . . qualifying words such as knowingly, intentionally, or fraudulently are omitted from provisions creating the offense . . . ." ' [Citation.]" (211 Cal.App.3d at p. 713.)

In *People* v. *Telfer* (1991) 233 Cal.App.3d 1194 [284 Cal.Rptr. 913], the court stated: "[O]rdinarily, '[i]n every crime or public offense there must exist a union, or joint operation of act and intent . . .' (Pen. Code, § 20.) That intent is variously known as mens rea, a guilty mind, guilty knowledge, or some other term denoting a culpable mental state. (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, §§ 97-98, pp. 115-117.) [¶] However, that general rule does not always apply to public welfare offenses created by statute. (1 Witkin & Epstein, *supra*, § 110, at pp. 129-131.) As our Supreme Court said long ago: 'A mistake of fact, or a want of intent, is not in every case a sufficient defense for the violation of a criminal statute. Statutes enacted for the protection of public morals, public health, and the public peace and safety are apt illustrations of the rule just announced. [Citations.] . . . "The maxim *actus non facit reum, nisi mens sit rea*,[3] does not always apply to crimes created by statute, and therefore if a criminal intent is not an essential element of a statutory crime, it is not necessary to prove any intent in order to justify a conviction. Whether a criminal intent or guilty knowledge is a necessary element of a statutory offense is a matter of construction to be determined from the language of the statute, in view of its manifest purpose and design. There are many instances in recent times where the Legislature in the exercise of the police power has prohibited, under penalty, the performance of a specific act. The doing of the inhibited act constitutes the crime, and moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt. The only fact to be determined in these cases is whether the defendant did the act. . . ." ' [Citation.]" (*Id.* at pp. 1198-1199.)

b. *Tax Statutes Are Regulatory or Public Welfare Statutes.*

In *United States* v. *Balint* (1922) 258 U.S. 250 [66 L.Ed. 604, 42 S.Ct. 301], a case involving an indictment under the Narcotic Act, the Supreme Court observed that at common law, scienter was a necessary element of

---

[3]"An act does not make [the doer of it] guilty, unless the mind be guilty . . . ." (Black's Law Dict. (5th ed. 1979) p. 34.)

every crime and this was followed even in statutory crimes where intent was not mentioned. (*Id.* at pp. 251-252 [66 L.Ed. at p. 605].) The court noted that the common law view has been modified and it is now a question of legislative intent as to whether intent is required. (*Id.* at p. 252 [66 L.Ed. at pp. 605-606].) The court specifically discussed tax legislation as being regulatory or public welfare in nature. The court stated: "Many instances of this are to be found in regulatory measures in the exercise of what is called the police power, where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes, as in cases of *mala in se*. [Citations.] So, too, in the collection of taxes, the importance to the public of their collection leads the legislature to impose on the taxpayer the burden of finding out the facts upon which his liability to pay depends, and meeting it at the peril of punishment." (*Ibid.*) The court noted the Narcotic Act was a taxing act and thus the Act was valid even though it imposed strict liability and did not require knowledge. (*Id.* at pp. 253-254 [66 L.Ed. at p. 606].)

There is no question that the collection of taxes serves a high public purpose. "The need of a state government for tax funds to carry out its legitimate governmental function is . . . a compelling need. . . ." (*People v. Roper* (1983) 144 Cal.App.3d 1033, 1042 [193 Cal.Rptr. 15].) Thus, tax statutes are regulatory or public welfare in nature.

### c. *Penalty Alone Does Not Determine Whether a Statute Is Regulatory.*

Allen additionally contends section 19401 cannot be a strict liability crime because the sentence imposed by the statute is punitive rather than regulatory. Section 19401 provides for a possible sentence of one year in jail, a fine of $5,000, or both a fine and jail and reimbursement for costs of investigation and prosecution.

The court in *People v. Martin, supra*, 211 Cal.App.3d 699, stated that "[l]ight penalties are not . . . the sine qua non of strict liability offenses. See *United States v. Ayo-Gonzalez* (5th Cir. 1976) 536 F.2d 652, 661, where the Fifth Circuit Court of Appeals listed several federal decisions upholding strict liability statutes with severe sentences. These cases include *United States v. Freed* (1971) 401 U.S. 601 [28 L.Ed.2d 356, 91 S.Ct. 1112] (possession of unregistered firearm, punishable by 10 years in prison, a $10,000 fine, or both); *United States v. Dotterweich, supra*, 320 U.S. 277 [88 L.Ed. 48, 64 S.Ct. 134] (misbranded or adulterated drugs, punishable by a $1,000 fine and/or one year for the first offense, $10,000 fine and/or three years for subsequent offenses); and *United States v. Balint* (1922) 258 U.S. 250 [66 L.Ed. 604, 42 S.Ct. 301] (unlawful drug sale punishable by five

years in prison)." (*Id.* at p. 714.) Thus, the determination of whether section 19401 is a strict liability offense does not turn on the type of punishment contained in the statute.

3. *Allen Had Sufficient Notice of Section 19401 Requirements and There Was No Due Process Violation.*

■ "It is well established that a conviction under a criminal enactment which does not give adequate notice that the conduct charged is prohibited is violative of due process." (*Wright* v. *Georgia* (1963) 373 U.S. 284, 293 [10 L.Ed.2d 349, 355-356, 83 S.Ct. 1240].)

■ Allen contends that section 19401 does not give him sufficient notice and thus violates due process. He argues the statute provides that two requirements may be violated: (1) "any requirement of this part" (pt. 10 of the Rev. & Tax. Code, div. 2) and (2) "any lawful requirement of the Franchise Tax Board under this part . . . ." The statute further requires that "any return" or "any information" may be required. Allen argues that he cannot discern from the statute what return or information he is required to file or provide and he cannot tell what specific statute, regulation or order requires him to provide the return or information. He further argues that he must speculate as to what statute he has violated and what document or information was required.[4] Allen complains that the Franchise Tax Board has not promulgated the necessary regulations to give him direction. Allen's contention is without merit.

A similar due process argument was addressed by this appellate district in *People* v. *Roper, supra,* 144 Cal.App.3d 1033. Roper argued that section 19406 was unconstitutionally vague because it failed to state who was required to file an income tax return and it failed to define income. (*Id.* at p. 1040.) The court rejected his argument by examining part 10 of the Revenue and Taxation Code which deals with personal income tax. (*Id.* at pp. 1040-1042.) The court found that the code provisions clearly provided a taxpayer notice of who was required to file a return and what constituted income. The court did not allow Roper to ignore the presence of other related tax statutes which amplified the requirements of section 19406.

The same analysis applies in this case. When section 19401 is examined in relation to the accompanying statutes in the Personal Income Tax law, it is clear Allen had sufficient notice of the relevant statutory requirements.

---

[4]We note that Franchise Tax Board sent Allen a demand letter in March of 1990, and that Allen responded and referenced the demand letter.

"California's income tax is divided into two parts, the Personal Income Tax Law (pt. 10 of div. 2, commencing with § 17001) and the Bank and Corporation Tax Law (pt. 11 of div. 2, commencing with § 23001)." (*Sklar v. Franchise Tax Board* (1986) 185 Cal.App.3d 616, 622 [230 Cal.Rptr. 42].) Thus, when section 19401 refers to "part," it means division 2, part 10 of the Revenue and Taxation Code which deals with personal income tax. (*People v. Roper, supra,* 144 Cal.App.3d at p. 1040.) Part 10 of division 2 includes chapter 17 which includes articles 1 and 2. Article 1 of chapter 17 of part 10 deals with "Persons Required to File Returns." Article 1 contains over 25 statutes which specify who must file returns and how they should be filed. Article 2 of chapter 17 of part 10 deals with the "Time and Place for Filing Returns." Section 18431 of article 2 requires the Franchise Tax Board to "prepare blank forms for the returns . . . and . . . distribute them throughout the state and furnish them upon application."

These statutes clearly give Allen sufficient notice of who should file, and what information must be provided. Since these Revenue and Taxation Code sections are self-executing, it is not required for due process purposes that the Franchise Tax Board promulgate additional instructions. A tax statute does not violate due process if it " 'prescribe[s] a standard sufficiently definite to be understandable to the average person who desires to comply with it. [Citations.]' " (*Spurgeon v. Franchise Tax Board* (1984) 160 Cal.App.3d 524, 530 [206 Cal.Rptr. 636].)

4. *Section 19401 Requires a Higher Standard of Guilt for the Criminal Than the Civil Offense.*

■ Allen argues that section 19401 is unconstitutional because it provides for both criminal and civil penalties but does not establish a higher "standard or degree of guilt or culpability" for the criminal offenses as opposed to the civil offense and thus it is unconstitutional. We disagree.

Allen's argument ignores the fact that California statutory law is generally written and enforced with the explicit understanding that civil suits require a lesser degree of proof than what is required in criminal prosecutions. This distinction between "lesser" and "higher" degrees of proof applies to all civil and criminal actions unless otherwise specified by statute or relevant decisional authority.

The degree of proof generally applicable in civil cases is a preponderance of the evidence. (1 Witkin, Cal. Evidence (3d ed. 1986) Burden of Proof and

Presumptions, § 157, p. 135.) In contrast, the degree of proof generally required in criminal cases is the much higher standard of beyond a reasonable doubt. (1 Witkin, Cal. Evidence, *supra*, §§ 145, 146, 163.) This standard of proof is codified in Penal Code section 1096.

In light of the foregoing principles, therefore, it must be presumed the Legislature intended the lesser preponderance of the evidence standard to apply to civil suits brought under section 19401, while it intended the higher standard of beyond a reasonable doubt to apply to criminal prosecutions brought under the statute.

Additionally, the fact section 19401, subdivision (a) is a strict liability offense does not mean violations of that subdivision can be established under a lesser standard of proof. The doctrine of strict criminal liability is not a standard of proof concept. Strict liability only concerns the elements necessary to prove an offense. (*People* v. *Trantham* (1984) 161 Cal.App.3d Supp. 1, 12, fn. 7 [208 Cal.Rptr. 535].) A defendant's guilt in a criminal case must still be established beyond a reasonable doubt even when strict liability offenses like section 19401, subdivision (a), are prosecuted.

In this case, the trial court instructed the jury that Allen's guilt must be established beyond a reasonable doubt. (CALJIC No. 2.90.) Consequently, Allen cannot complain that an improper standard was used.[5]

5. *Equal Protection.*

Finally, Allen claims that section 19401 "denies a defendant equal treatment under the law." However, we need not deal with this contention because he cites no evidence from the record or legal authority to support this argument. ■ "Where a point is merely asserted by counsel without any argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion. [Citations.]" (*People* v. *Ham* (1970) 7 Cal.App.3d 768, 783 [86 Cal.Rptr. 906], overruled on another ground in *People* v. *Compton* (1971) 6 Cal.3d 55, 60, fn. 3 [98 Cal.Rptr. 217, 490 P.2d 537].)

---

[5]We note that Allen shall be deemed to have challenged the constitutionality of CALJIC No. 2.90 (4th ed. 1979) as in *Sandoval* v. *California*, certiorari granted September 28, 1993, __ U.S. __ [125 L.Ed.2d 789, 114 S.Ct. 40].

Allen's challenge to CALJIC No. 2.90 is hereby rejected on the ground that, pursuant to *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], the court is bound by the California Supreme Court's resolution of the issue. (*People* v. *Sims* (1993) 5 Cal.4th 405, 457 [20 Cal.Rptr.2d 537, 853 P.2d 992].)

## DISPOSITION

The judgment is affirmed. The People are awarded costs on appeal.

Klein, P. J., and Hinz, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 2, 1994.