Filed 7/7/20

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | BR 054679 |
| Plaintiff and Respondent, | ) | Central Trial Court |
| v. | ) | No. 9CJ00243 |
| STEVE P. GONZALEZ, | ) | |
| Defendant and Appellant. | ) | **OPINION** |

Appeal from a Judgment of the Superior Court of Los Angeles County, Central Criminal Trial Court, Kimberley Baker Guillemet, Judge. Affirmed.

Steven Slavitt, Esq., for Defendant and Appellant.

Michael N. Feuer, City Attorney, City of Los Angeles; Meredith A. McKittrick, Supervising Deputy City Attorney; and Lisabeth A. Shiner, Deputy City Attorney, for Plaintiff and Respondent.

*      *      *

## INTRODUCTION

We hold here City of Los Angeles provisions which make it a misdemeanor for persons to establish, or operate, or participate in unlicensed commercial cannabis establishments (Los Angeles Mun. Code (LAMC), § 104.15, subds. (a)(1) (104.15(a)(1)), (b)(2) (104.15(b)(2))) are not unconstitutionally vague.  Because the crimes constitute public welfare offenses, we further hold the prosecution is not required to prove the accused either knew the businesses were unlicensed or had the intent to operate them without a license.

Defendant Steve P. Gonzalez was found guilty in a jury trial of violations of 104.15(a)(1) and 104.15(b)(2) after he was arrested in the unlicensed "Keep 'Em Lit" cannabis store for selling its products from the business's counter.[1]  The court suspended imposition of sentence and placed him on probation, and he appeals the judgment.  As discussed below, we affirm.

## BACKGROUND

The complaint alleged defendant committed the violations on March 21, 2019, in the City of Los Angeles (City).  It was alleged he violated 104.15(a)(1), making it a misdemeanor to "establish, operate, or participate as an [e]mployee, contractor, agent or volunteer, in any unlicensed [c]ommercial [c]annabis [a]ctivity in the City," and 104.15(b)(2), which provides it is a misdemeanor for a person to "[p]articipate as an [e]mployee, contractor, agent or volunteer or in any other capacity in an [u]nlawful [e]stablishment."

Defendant pleaded not guilty, and moved to dismiss the charges, arguing they violate due process of law because they are vague on their face.  The court denied the motion, finding 104.15(a)(1) and 104.15(b)(2) provide sufficient notice to persons of the prohibited conduct, and they contain appropriate guidelines to prevent arbitrary and discriminatory enforcement.

On the day trial was to start, the prosecutor argued the court should determine the crimes are strict liability offenses, not requiring proof of scienter or mental state for a conviction.  Defense counsel contended the offenses are simply "crimes involving the sale of drugs," and

---

[1]The jury found defendant not guilty of the unpermitted use of land (LAMC, § 12.21, subd. (a)(1)).

2

such offenses always require knowledge or intent. The court ruled the 104.15(a)(1) and 104.15(b)(2) charges pertain to regulating how a business is being run, and are strict liability offenses.

At trial, Corey Blake, a management analyst with the City Department of Cannabis Regulation's Business and Licensing section, testified the City can issue licenses and temporary approvals for the operation of retail commercial cannabis sales. "Temporary approval allows those businesses that have [submitted] an application to go through the vetting process while they go through the licensing phase." As of the date of the trial (June 2019), no retail commercial cannabis sales licenses had been issued, but approximately 300 retailers had received temporary approval to conduct storefront sales.

To obtain a license or temporary approval, a retailer must submit an online application, and information concerning the status of the application and whether a license or temporary approval has been provided is available in a database. Blake searched the database to find out if a business located at 1345 West Manchester Avenue in the City had received temporary approval to operate, and determined it had not. He also looked for the name of a retailer called Keep 'Em Lit and defendant's full name (Steve Patrick Gonzalez), and found no temporary approval had issued. Blake further testified he searched the database under the address, name of the store, and defendant's name and did not find any application to operate a retail cannabis establishment.

City Police Department Salvador Reyes testified he had been an officer for 22 years and had extensive training and expertise in investigating narcotics and conducting storefront cannabis sales enforcement. On March 21, 2019, at approximately 4:55 p.m., he participated with other officers in the execution of a search warrant on the Keep 'Em Lit cannabis business in a strip mall at 1345 West Manchester. The location had a green cross sign outside used to advertise cannabis sales. As he entered, he noted there was a sales lobby with vaping inserts and glass jars containing green leafy substances resembling cannabis in display cases. One of the cases had a sign saying "25 cap," indicating the cannabis was being sold for no more than

3

$25 per gram. The police found a digital scale on a counter, and $2,075 in currency in a cash drawer.

Defendant was located inside, and $717 in cash and keys opening the store's doors were found on his person. All told, $9,357 and approximately 29 pounds of material resembling cannabis were recovered in executing the warrant. Reyes testified he found video cameras throughout the business, along with a surveillance monitor next to a money counting machine and a safe in a back room. He viewed video captured by the cameras, and saw footage of defendant in the store, shortly prior to when the officers entered.[2]

Alysa Gonzalez Castaneda, a City Police Department Criminalist, testified she analyzed green plant material seized from the 1345 West Manchester location. She determined the material tested positive for cannabis.

After the jury's verdicts and his sentencing, defendant filed a timely notice of appeal.

DISCUSSION

Due Process

We review the constitutionality of a statute or ordinance on appeal de novo. (*In re Brian J.* (2007) 150 Cal.App.4th 97, 124.) "The starting point of our analysis is 'the strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.]" [Citation.]'" (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 568.)

Defendant only asserts the ordinances at issue are unconstitutionally vague on their face, not as applied to his own conduct. Accordingly, we consider solely the provisions themselves, not their application to the particulars of defendant's participation in the crimes. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)

"That no person shall be deprived of life, liberty or property without due process of law is, of course, a cornerstone of our jurisprudence." (*People v. Superior Court (Caswell)* (1988)

---

[2]The video was admitted into evidence, but not transmitted to this court. (See Cal. Rules of Court, rule 8.870.) According to the prosecutor's description of the video during closing argument, it appears to be undisputed the video showed defendant selling cannabis to a person from the counter of the store.

46 Cal.3d 381, 389.) Due process under the Fourteenth Amendment to the United States Constitution "require[s] 'a reasonable degree of certainty in legislation, especially in the criminal law . . . .' [Citation.] '[A] penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' [Citations.] [¶] It is established that in order for a criminal statute to satisfy the dictates of due process, two requirements must be met. First, the provision must be definite enough to provide a standard of conduct for those whose activities are proscribed. [Citations.] . . . [¶] Second, the statute must provide definite guidelines for the police in order to prevent arbitrary and discriminatory enforcement. [Citations.]" (*People v. Heitzman* (1994) 9 Cal.4th 189, 199-200; see *Grayned v. City of Rockford* (1972) 408 U.S. 104, 108.)[3]

The provisions were enacted as part of City Ordinance No. 185,343 effective December 19, 2017. LAMC, section 104.15, subdivisions (a) and (b), provide, in full: "(a) Prohibitions on [u]nlicensed [c]ommercial [c]annabis [a]ctivity and [c]ertain [m]edical [m]arijuana [c]ollectives. [¶] 1. It is unlawful for a [p]erson to establish, operate, or participate as an [e]mployee, contractor, agent or volunteer, in any unlicensed [c]ommercial [c]annabis [a]ctivity in the City. [¶] 2. It is unlawful for a [p]erson to establish, operate or participate in a medical marijuana collective or cooperative unless in a dwelling unit with three or fewer qualified patients, persons with identification cards or primary caregivers, or any combination thereof. [¶] 3. The prohibitions in [s]ubsections (a)1. and (a)2., include renting, leasing to or otherwise allowing any unlicensed [c]ommercial [c]annabis [a]ctivity or a medical marijuana collective or cooperative to occupy or use any building or land. [¶] (b) Starting on January 1, 2018, it is unlawful to: [¶] 1. Own or operate an [u]nlawful [e]stablishment; [¶] 2. Participate as an [e]mployee, contractor, agent or volunteer or in any other capacity in an [u]nlawful [e]stablishment; [¶] 3. Use any portion of any parcel of land as an [u]nlawful [e]stablishment;

---

[3]The California Constitution contains similar protections (Cal. Const., art. I, § 7), but defendant does not assert any state constitutional violation.

or [¶] 4. Lease, rent to, or otherwise allow an [u]nlawful [e]stablishment to occupy any portion of parcel of land."

Terms used are defined with specificity. "'Unlawful [e]stablishment' means any [p]erson engaged in [c]ommercial [c]annabis [a]ctivity if the [p]erson does not have a City issued [t]emporary [a]pproval or [l]icense." (LAMC, § 104.01, subd. (a)(29).) "'License' means a City license issued under this article." (LAMC, § 104.01, subd. (a)(14).) "'Temporary [a]pproval' means a [Department of Cannabis Regulation]-issued temporary license that authorizes an [a]pplicant to engage for a limited period of time in [c]ommercial [c]annabis [a]ctivity as would be permitted under the privileges of a non-temporary [l]icense of the same type." (LAMC, § 104.01, subd. (a)(27).) "'Commercial [c]annabis [a]ctivity' includes the cultivation, possession, manufacture, distribution, processing, storing, laboratory testing, packaging, labeling, transportation, delivery or sale of [c]annabis or [c]annabis products in the City . . . ." (LAMC, § 104.01, subd. (a)(7).) "'Employee' means a person who works for compensation and is under the control of an employer. Employee as defined herein includes seasonal and contract employees." (LAMC, § 104.01, subd. (a)(13).)

Words not defined by the ordinances have straightforward meanings that are readily comprehensible. For example, in the present context, "participates" is commonly understood to mean "to take part [in]" (< http://www.merriam-webster.com/dictionary/participate >); a "contractor" is "one that contracts to perform work or provide supplies" (*ibid.* < /contractor >); "agent" means "one who is authorized to act for or in the place of another" (*ibid.* < /agent >); a "volunteer" is "[a] person who works for an organization without being paid" (< http:// www.oxforddictionaries.com/definition/english/volunteer >; see *People v. Whitlock* (2003) 113 Cal.App.4th 456, 462 [when interpreting a provision, "[t]o ascertain the common meaning of a word, 'a court typically looks to dictionaries'"].)

Due to the staggered effective dates of 104.15(a)(1) and 104.15(b)(2), there is a certain amount of overlap by the ordinances with respect to the outlawed conduct. 104.15(a)(1) applies to "unlicensed [c]ommercial [c]annabis [a]ctivity," whereas 104.15(b)(2), starting on January 1, 2018, applies to "an [u]nlawful [e]stablishment." Such an establishment is defined as "a

6

[p]erson engaged in [c]ommercial [c]annabis [a]ctivity if the [p]erson does not have a City issued [t]emporary [a]pproval or [l]icense." (LAMC, § 104.01, subd. (a)(29).) Since "[t]emporary [a]pproval" is defined as a [Department of Cannabis Regulation]-issued temporary *license*" (LAMC, § 104.01, subd. (a)(27)), both 104.15(a)(1) and 104.15(b)(2) apply to establishments that lack a license.[4]

The prohibited conduct is plainly stated. Establishing or operating or participating—whether as an employee or contractor or agent or volunteer—at a cannabis business lacking a license constitutes a 104.15(a)(1) offense. Participating—as an employee or contractor or agent or volunteer or in any other capacity—at an unlicensed cannabis business is a 104.15(b)(2) violation. Simply put, if a commercial cannabis establishment does not have a license, it is unlawful to engage in any of the provisions' enumerated activities.

104.15(a)(1) and 104.15(b)(2) thus give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he, [she or they] may act accordingly." (*Grayned v. City of Rockford*, *supra*, 408 U.S. at p. 108.) By setting forth what conduct is barred with particularity, the statutes also provide clear guidelines to law enforcement, delineating a standard for the police to determine what activity violates the provisions. (See *Kolender v. Lawson* (1983) 461 U.S. 352, 358 [to comport with due process, legislation must "establish minimal guidelines to govern law enforcement" so as to prevent "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections"].)

Defendant posits 104.15(a)(1) and 104.15(b)(2) may be vague as applied to hypothetical situations, asking "would a third party vendor, for example, who delivers marijuana to an unlawful commercial cannabis business be acting as an agent [or] contractor?" "[W]hat if a plumber or maid comes to this unlawful establishment and provides services as a plumber or maid, are they violating this statute?" But, in a facial challenge to a provision, the potential uncertain applicability of the ordinance in hypothesized scenarios is of no constitutional concern.

---

[4]An argument could be made that, starting January 1, 2018, only LAMC section 104.15, subdivision (b) applies to owning, operating, or participating in an unlicensed cannabis business. But, as the parties have made no such argument, we do not further address the issue.

A facial challenge is "'the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [law] would be valid.' [Citation.]" (*Hatch v. Superior Court* (2000) 80 Cal.App.4th 170, 193, italics omitted.) In a facial attack, a person ""'"cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular application of the [provision].'" [Citation.]" (*Coffman Specialties, Inc. v. Department of Transportation* (2009) 176 Cal.App.4th 1135, 1145. See *United States v. Salerno* (1987) 481 U.S. 739, 745 ["The fact that the [statute being reviewed] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment"].) Instead, a person challenging an ordinance must show the "provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Tobe v. City of Santa Ana*, *supra*, 9 Cal.4th at p. 1084, citations omitted.) Defendant has failed to so demonstrate. The provisions are unquestionably not vague in all situations, including when a person sells cannabis from the counter of an unlicensed business.

Defendant cites *City of Chicago v. Morales* (1999) 527 U.S. 41 (*Morales*) in support of his argument that the ordinances are vague. His reliance is misplaced.

The provision in *Morales* was materially different than the legislation in the case *sub judice*. The ordinance provided, in relevant part, "Whenever a police officer observes a person whom he reasonably believes to be a criminal street gang member loitering in any public place with one or more other persons, he shall order all such persons to disperse and remove themselves from the area. Any person who does not promptly obey such an order is in violation of this section." (See *id.* at p. 47, fn. 2.) With regard to the requirement that the statute provide guidelines to law enforcement, *Morales* noted "the principal source of the vast discretion conferred on the police in this case is the definition of loitering [in the ordinance] as 'to remain in any one place with no apparent purpose.'" (*Id.* at p. 61.) *Morales* found that allowing the police to ascertain when a person had "no apparent purpose" for remaining in a place with a gang member ran afoul of due process, because the ordinance "'provides absolute

8

discretion to police officers to decide what activities constitute loitering.'" (*Ibid.*) In contrast, 104.15(a)(1) and 104.15(b)(2) do not contain terms that leave it to the unfettered discretion of law enforcement to decide who should be prosecuted for violating the provisions.

We reach the same conclusion on the vagueness issue as the trial court. Defendant was not entitled to dismissal based on the provisions being unconstitutional.

Strict Liability

Because the question of whether the provisions amount to strict liability crimes is based on the legal issue of the interpretation of the ordinances, we exercise de novo review. (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1276.) To determine whether the provisions require proof of scienter, "'our primary task is to determine the [enacting body's] intent. [Citations.]'" (*In re Carr* (1998) 65 Cal.App.4th 1525, 1530; see *Lyles v. Sangadeo-Patel* (2014) 225 Cal.App.4th 759, 765 [same rules of construction apply to interpretation of statutes and local ordinances].)

"'[W]e turn first to the statutory language, since the words the [enacting body] chose are the best indicators of its intent.' [Citations.]" (*Ibid*.) We examine the ordinances' language to ascertain if they specify that intent is required to violate its provisions because "[s]trict liability offenses are denoted where "'. . . qualifying words such as knowingly, intentionally, or fraudulently are omitted from provisions creating the offense . . . .'" [Citation.]" (*People v. Martin* (1989) 211 Cal.App.3d 699, 713.)

The provisions prohibit activities without specifying intent or knowledge is required. The ordinances make it unlawful to "establish, operate, or participate . . . in any unlicensed Commercial Cannabis Activity" (104.15(a)(1)), and to "[p]articipate as an [e]mployee, contractor, agent or volunteer or in any other capacity in an [u]nlawful [e]stablishment" (104.15(b)(2)) without requiring a person must know that a cannabis business lacks a license, and without any need to show an accused intended to operate a business without a license. The absence of words such as "knowingly," "intentionally," or "wilfully" in the statutes indicates a legislative intent that the offenses described be considered strict liability crimes. (See *People v. Allen* (1993) 20 Cal.App.4th 846, 850; *People v. Martin*, *supra*, 211 Cal.App.3d at p. 713.)

9

The lack of a scienter requirement in the text of a provision is not always dispositive of the question. (*In re Jorge M.* (2000) 23 Cal.4th 866, 872 (*Jorge M.*).) But, it is commonly the case that, with regard to public welfare offenses, a legislative body will intend guilt can be proved without proof of any scienter or wrongful intent. (*Ibid.*) "'"Such offenses generally are based upon the violation of statutes which are purely regulatory in nature and involve widespread injury to the public. [Citation.] 'Under many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations, criminal sanctions are relied upon even if there is no wrongful intent.'"' [Citation.]" (*In re Jennings* (2004) 34 Cal.4th 254, 267.) Regulation of a specific trade or business by providing for criminal penalties is the hallmark of a public welfare offense. (See, e.g., *id.* at pp. 267-268 [selling alcohol to a minor is a strict liability offense]; *People v. Guinn* (1983) 149 Cal.App.3d Supp. 1, 9-10 [selling alcoholic beverages without a valid license held to require no mens rea].)

104.15(a)(1) and 104.15(b)(2) qualify as such offenses. The provisions were enacted as part of Ordinance No. 185,343 by the City Council on December 19, 2017, "to regulate commercial cannabis activities in the City" and to establish a licensing scheme for commercial sales of marijuana. (See LAMC, § 104.00.) Ordinance No. 185,343's stated purpose was to allow the City "to issue licenses in an orderly and transparent manner to eligible applicants according to the requirements of this article and the [r]ules and [r]egulations, and to mitigate the negative impacts brought by unregulated [c]annabis businesses." (L.A. Ord. No. 185,343, § 1.) The ordinance provides, "Without comprehensive regulations, consumers in the City were vulnerable to the dangers inherent in ingesting and using a substance that was not subject to basic rules of safety for ingestible substances. Nor were the businesses penalized for unscrupulous practices utilized against defenseless consumers. Further, unregulated cannabis businesses remain a source of danger for unsuspecting neighbors when fires or other catastrophes take place at those locations." (LAMC, § 104.00.) The provisions were intended

10

to be an integral part of a comprehensive regulatory scheme involving cannabis establishments in the City.[5]

Jorge M. sets forth a list of factors a court considers in ascertaining whether a provision is a strict liability offense. As we noted in *People v. Optimal Global Healing, Inc.* (2015) 241 Cal.App.4th Supp. 1, 13, "*In re Jorge M.* found consideration of the following factors useful: '(1) the legislative history and context; (2) any general provision on mens rea or strict liability crimes; (3) the severity of the punishment provided for the crime . . . ; (4) the seriousness of harm to the public that may be expected to follow from the forbidden conduct; (5) the defendant's opportunity to ascertain the true facts . . . ; (6) the difficulty prosecutors would have in proving a mental state for the crime . . . ; [and] (7) the number of prosecutions to be expected under the statute . . . .'[6] [Citation.]" (See *Jorge M.*, *supra*, 23 Cal.4th at p. 872.)

(1) With regard to the history of the provisions, 104.15(a)(1) and 104.15(b)(2) were enacted in 2017 to replace an ordinance adopted by voters of the City of Los Angeles as part of Proposition D in 2013 to regulate medical cannabis businesses. (See *People v. Onesra Enterprises, Inc.* (2018) 24 Cal.App.5th Supp. 9, 16.)[7] Former LAMC section 45.19.6.2 made it a misdemeanor to "own, establish, operate, use, or permit the establishment or operation of a [medical marijuana business], or to participate as an employee, contractor, agent or volunteer,

---

[5]Scienter is implied in general statutes making it unlawful to sell narcotics. (See *People v. Corkrean* (1984) 152 Cal.App.3d 35, 38-39.) But, contrary to defendant's argument, this rule is inapplicable to 104.15(a)(1) and 104.15(b)(2), because they involve sales and related activity in a public welfare regulatory context.

[6]"'The fewer the expected prosecutions, the more likely the [L]egislature meant to require the prosecuting officials to go into the issue of fault.' [Citation.]" (*Jorge M.*, *supra*, 23 Cal.4th at p. 873.)

[7]The medical cannabis ordinance in Proposition D was repealed by Ordinance No. 185,343 because the California voters in 2016 enacted the Adult Use of Marijuana Act. (The 2016 act provided that it does not violate California law for a person 21 years of age or older to possess and purchase no more than specified amounts of cannabis and concentrated cannabis, and that cannabis may be sold at a retail level with a license.) The City enacted the new provisions to regulate all retail sales of cannabis. (See *People v. Onesra Enterprises, Inc.*, *supra*, 24 Cal.App.5th at pp. Supp. 15-Supp. 16.) We grant the People's motion on appeal to judicially notice the ordinance enacted by Proposition D and Ordinance No. 185,343.

or in any other manner or capacity in any [medical marijuana business]," or to rent, lease, or otherwise permit [such a business] to occupy or use a location.[8]

As with the similarly worded 104.15(a)(1) and 104.15(b)(2) provisions, former LAMC section 45.19.6.2 contained no express scienter requirement, and we held in *People v. Optimal Global Healing, Inc.*, *supra*, 241 Cal.App.4th at page Supp. 13, that it was a strict liability offense. "Generally, we presume that [a legislative body] is aware of appellate court decisions." (*City and County of San Francisco v. Strahlendorf* (1992) 7 Cal.App.4th 1911, 1915; accord, *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1155-1156.) The enactment of provisions lacking any reference to scienter which govern the same general subject matter, and use similar language, as an ordinance which was judicially interpreted to be a strict liability offense indicates 104.15(a)(1) and 104.15(b)(2) were intended to be strict liability crimes.

(2) California's general mens rea statute, Penal Code section 20, states, "'[i]n every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence.'" (*Jorge M.*, *supra*, 23 Cal.4th at p. 879.) But, "[t]he interpretive rule embodied in this statute is by no means inflexible." (*Ibid.*) The statute does not apply when the purpose of laws is to protect public health and the penalties are not substantial. (See *ibid.*) As discussed previously, the provisions were intended to safeguard public health, and as we note below, the penalties provided are comparatively light.

(3) Relatively light penalties are associated with strict liability offenses. (*People v. Simon* (1995) 9 Cal.4th 493, 521.) LAMC section 104.15, subdivision (d), sets forth the penalties for violations of 104.15(a)(1) and 104.15(b)(2): "Any Person violating this section shall be guilty of a misdemeanor punishable by a fine of not more than $1,000 or by imprisonment in the County Jail for a period of not more than six months, or by both a fine and

_____

[8]Former LAMC section 45.19.6.3 provided limited immunity from prosecution for the offense where the business satisfied several criteria, including having been in operation since 2007 and having previously registered with the City.

12

imprisonment."[9]  This punishment is more than that provided for committing an infraction, which is not punishable by imprisonment (Pen. Code, § 19.6), but far less than that provided for felonies, which can subject a defendant to years in state prison (Pen. Code, § 17, subd. (a)). The Court of Appeal has found that a law constituted a strict liability crime despite the crime being a misdemeanor with a possible sentence of up to one year in jail.  (*People v. Allen*, *supra*, 20 Cal.App.4th at p. 855 [failure to file state income tax return].)  In *People v. Optimal Global Healing, Inc.*, *supra*, 241 Cal.App.4th at page Supp. 14, we found six months punishment in jail and up to a $1,000 fine for a violation of former LAMC section 45.19.6.2 was sufficiently light to militate against finding an intent to require mens rea, and we find the same here.

(4)  As to the seriousness and widespread nature of the harm at issue, we already alluded to the fact the provisions were enacted "to mitigate the negative impacts brought by unregulated [c]annabis businesses" (L.A. Ord. No. 185,343, § 1).  Ordinance No. 185,343's urgency clause vividly spells out the dangers involved: "the proliferation of unauthorized cannabis businesses, with the attendant crime and negative secondary impacts, poses a current and immediate threat to the public welfare; that despite aggressive enforcement by the office of the City Attorney, an unknown number of unauthorized cannabis businesses, including growers, delivery apps and delivery services, continue to open, close, and reopen within the City, and the proliferation of these unauthorized businesses has led to increased crime and negative secondary impacts in neighborhoods, including but not limited to violent crimes, robberies, the distribution of tainted marijuana, and the diversion of marijuana; . . . ." (L.A. Ord. No. 185,343, § 3.)

(5)  A person can readily ascertain if a cannabis operation is licensed or has a temporary approval license to operate.  The City operates a publicly accessible website where a person may check if a cannabis store may lawfully operate (https://cannabis.lacity.org/resources/

_____

[9]Although not at issue in this case because defendant was convicted of misdemeanor violations, LAMC section 104.15, subdivision (d), further provides, "A violation of this section by an [e]mployee, contractor, agent or volunteer, who has no financial interest in the [u]nlawful [e]stablishment, may be punishable by means of a [civil penalty] citation issued under the City's Administrative Citation Enforcement Program."

13

authorized-retail-businesses).  The State of California also has a website where a person can check to determine if a business has a state license (http://capotcheck.com).[10]  In addition, LAMC section 104.11, subdivision (b), provides, "A [l]icense must be prominently displayed at the [b]usiness [p]remises in a manner that makes it readable from the exterior of the [b]usiness [p]remises."  A person can check the storefront window and determine if the business is lawfully operating.

(6)  Proving a mental state for the offenses in some situations could be problematic.  As observed by *People v. Optimal Global Healing, Inc.*, *supra*, 241 Cal.App.4th at page Supp. 14, with regard to the former LAMC ordinance, "other than by inferring or presuming defendants knew what they were doing when they [operated an establishment], prosecutors might well have a difficult time proving defendants knew what they were doing was prohibited."

(7)  As to the number of prosecutions involved, when the trial court was considering the *Jorge M.* factors, the prosecutor told the court, "My supervisor just confirmed that last year we filed 170 cases and we have filed 116 cases to date this year."[11]  The court stated it had "no way of verifying that number," but concluded that, "As an officer of the court, I presume that [the prosecutor's] representations are as accurate as possible to the best of her knowledge."  Indeed, it was largely due to the "the proliferation of unauthorized cannabis businesses" that the provisions were enacted as part of an urgency measure (see L.A. Ord. No. 185,343, § 3).  There thus appears to be numerous expected prosecutions involving the provisions.

All seven factors weigh in favor of finding the provisions are strict liability offenses. There was no error when the trial court found defendant could be convicted without requiring the prosecution to prove knowledge or intent.

---

[10]A license from a local government entity is needed to obtain a state license.  (See, e.g., LAMC, § 104.00.)  We grant the People's motion to judicially notice the existence of the City and California websites.

[11]"[T]o date this year" was a reference to the number of cases as of June 27, 2019.  Hence, the numbers were on track to pass the previous year by about 62 cases; approximately a 36.5 percent increase.

## DISPOSITION

The judgment is affirmed.

                                  _____

                                  Ricciardulli, J.

We concur:

_____        _____

Kumar, Acting P. J.                     Richardson, J.